# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

SARAHJANE BLUM, *et al.*,

        Plaintiffs,

    v.

ERIC HOLDER, *in his official capacity
as Attorney General of the United States
of America*,

        Defendant.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:11-cv-12229-JLT

(Leave To File Excess Pages Granted
on 3/7/12)

Oral Argument Set For May 14, 2012
(By Order of the Court on 3/7/12)

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)

## **TABLE OF CONTENTS**

**PAGES**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      PLAINTIFFS' COMPLAINT MUST BE DISMISSED PURSUANT TO RULE
12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION.. . . . . . . . . . . . . . . . . . . 5

      A.      Plaintiffs Lack Standing Because They Have Not Suffered Any Specific
Present Objective Harm or Alleged a Threat of Specific Future Harm.. . . . . . . . . 5

      B.      Plaintiffs' Claims are not Ripe for Review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

II.     PLAINTIFFS' COMPLAINT MUST BE DISMISSED PURSUANT TO RULE
12(b)(6) FOR FAILURE TO STATE A CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      A.      The AETA is Not Unconstitutionally Overbroad. . . . . . . . . . . . . . . . . . . . . . . . . 16

      B.      The AETA is Not Impermissibly Vague. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

      C.      The AETA is Viewpoint and Content Neutral.. . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGES**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967)........................................................ 14

*Allen v. Wright*,
   468 U.S. 737 (1984).......................................................... 5

*Am. Commc'n Assn. v. Douds*,
   339 U.S. 382 (1950)........................................................ 26

*Babbitt v. United Farm Workers Nat'l Union*,
   442 U.S. 289 (1976)................................................. 6, 7, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................ 16

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969)........................................................ 21

*Colautti v. Franklin*,
   439 U.S. 379 (1979)........................................................ 24

*Deal v. United States*,
   508 U.S. 129 (1993)........................................................ 18

*Elk Grove Unified School Dist. v. Newdow*,
   542 U.S. 1 (2004)............................................................ 5

*Ernst & Young v. Depositors Econ. Prot. Corp.*,
   45 F.3d 530 (1st Cir. 1995)............................................... 15

*Frisby v. Schultz*,
   487 U.S. 474 (1988)........................................................ 28

*Giboney v. Empire Storage & Ice Co.*,
   336 U.S. 490 (1949)........................................................ 21

*Gonzales v. Carhart*,
   550 U.S. 124 (2007)........................................................ 24

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hill v. Colorado,*
   530 U.S. 703 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Holder v. Humanitarian Law Project,*
   130 S.Ct. 2705 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Jarecki v. G.D. Searle & Co.,*
   367 U.S. 303 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Laird v. Tatum,*
   408 U.S. 1 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 14

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 14

*Mangual v. Rotger-Sabat,*
   317 F.3d 45 (1st Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McCullen v. Coakley,*
   571 F.3d 167 (1st Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 29

*Meese v. Keene,*
   481 U.S. 465 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Members of City Council of L.A. v. Taxpayers for Vincent,*
   466 U.S. 789 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Nat'l Org. for Marriage v. McKee,*
   649 F.3d 34 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*N.H. Right to Life Political Action Comm. v. Gardner,*
   99 F.3d 8 (1st Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 14

*New York v. Ferber,*
   458 U.S. 747 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Osediacz v. City of Cranston,*
   414 F.3d 136 (1st Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Ozonoff v. Berzak*,
    744 F.2d 224 (1st Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Papasan v. Allain*,
    478 U.S. 265 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*R.I. Ass'n of Realtors v. Whitehouse*,
    199 F.3d 26 (1st Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Sabri v. United States*,
    541 U.S. 600 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Steffel v. Thompson*,
    415 U.S. 452 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Ahlers*,
    305 F.3d 54 (1st Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Buddenberg*,
    2009 WL 3485937 (N.D. Cal. Oct. 28, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*United States v. Champlin Refining Co.*,
    341 U.S. 290 (1951). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Dinwiddie*,
    76 F.3d 913 (8th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Fullmer*,
    584 F.3d 132 (3d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Weslin*,
    156 F.3d 292 (2d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*United States v. Williams*,
    553 U.S. 285 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22, 26

*Valley Forge Christian College v. Am. United for Separation of Church and State*,
    454 U.S. 464 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 23

*Virginia v. Hicks*,
    539 U.S. 113 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17, 22

*Warth v. Seldin*,
    422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*White v. United States*,
    601 F.3d 545 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wisconsin v. Mitchell*,
    508 U.S. 476 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## **STATUTES**

18 U.S.C. § 43 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 43 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## **MISCELLANEOUS**

*Animal Enterprise Terrorism Act: Hearing Before Subcomm. on Crime, Terrorism, and
Homeland Security of the H. Comm. On the Judiciary*, 109th Cong. 34. . . . . . . . . . . . . 14, 20, 27

152 Cong. Rec. H8590 (daily ed. Nov. 12, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 20

152 Cong. Rec. S10793-05 (daily ed. Sept. 29, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## **INTRODUCTION**

This is a pre-enforcement, constitutional challenge under the First and Fifth Amendments to the Animal Enterprise Terrorism Act, 18 U.S.C. § 43 (2006) ("AETA" or "the Act"), a criminal statute passed by Congress in response to increasing violence against businesses that use or sell animals or animal products.  To prevent and punish organized campaigns of terror against these businesses and those associated with them, the AETA criminalizes traveling in or using interstate commerce for the purpose of damaging or interfering with the operations of an animal enterprise, and, in connection with that purpose, intentionally damaging or causing the loss of property or intentionally placing an individual in fear of his or her safety.  Meanwhile, to protect the rights of those who seek to lawfully protest animal enterprises or hurt their bottom line by changing public opinion, the Act includes a "rule of construction" – that it shall not be construed to prohibit any conduct or speech covered by the First Amendment.  Plaintiffs, five individuals with histories of animal rights activism, seek total invalidation of the statute on the grounds that the Act is unconstitutionally overbroad, vague, and discriminatory.  But in seeking this drastic relief, Plaintiffs overlook the Act's "rule of construction" and contort the plain language of the statute.  Despite Plaintiffs' ideological disagreement with the Act, Plaintiffs do not have standing to challenge it and cannot ultimately prevail, for the AETA is constitutionally sound.

To begin, Plaintiffs have not been injured by operation of the AETA.  Plaintiffs do not allege that they have been prosecuted under the Act, that they have been threatened with such prosecution, or that they intend to engage in any conduct prohibited by the Act.  Instead, Plaintiffs claim that they are "chilled" from engaging in activities such as attending lawful protests or disseminating information to raise awareness about animal rights.  But this type of

1

advocacy – while protected by the First Amendment – is not proscribed by the statute, which is aimed at intentional conduct that physically damages or causes the loss of property or that places an individual in fear of bodily harm or death.  Because Plaintiffs do not allege a desire to engage in such harmful or violent conduct, Plaintiffs have failed to establish a credible threat of prosecution or that their alleged "chill" is objectively reasonable.

Nonetheless, Plaintiffs, speculating that the Act may be enforced against them because of their strong public views, contend that the Act violates both the First and Fifth Amendments. Even assuming Plaintiffs have standing, their claims must be dismissed, for the AETA does not proscribe speech.  Rather, it criminalizes violent, unlawful, and intentional conduct, such as vandalism, theft, harassment, and intimidation, undertaken to interfere with the operations of an animal enterprise.  This type of activity, even if performed in furtherance of some political or social goal, is not shielded by the First Amendment.  Moreover, there is nothing vague about the Act's substantive terms, and to the extent there is any question as to the law's reach, the AETA explicitly provides that it shall not be construed to prohibit constitutionally protected conduct or speech.  Thus, the law does not suffer from impermissible overbreadth or vagueness, and it does not target any one viewpoint or proscribe only speech conveying a certain message.  Plaintiffs' arguments to the contrary are wholly without merit.  This suit must be dismissed.

## **BACKGROUND**

The Animal Enterprise Terrorism Act, 18 U.S.C. § 43, was enacted by Congress and signed into law by the President in November of 2006 as a response to an increasing number of

incidences of violence and threats against animal enterprises.[1]  *See* 152 Cong. Rec. H8590 (daily ed. Nov. 13, 2006) (House consideration and passage of S. 3880).  The Act, which amended the Animal Enterprise Protection Act, 18 U.S.C. § 43 (2002) ("AEPA"), sought to cover "gaps or loopholes" in its predecessor statute by "expand[ing] the reach of Federal criminal law to specifically address the use of force, violence or threats against not only animal enterprise organizations, but also those who do business with them."  *Id*. at *H8591.

The AETA contains five main sections, four of which are at issue here.  Section (a) describes the conduct punishable under the statute.  An individual violates the AETA if he or she "travels in interstate or foreign commerce, or uses or causes to be used the mail or any facility of interstate or foreign commerce--"

> (1) for the purpose of damaging or interfering with the operations of an animal enterprise; and
>
> (2) in connection with such purpose--
>
> (A) intentionally damages or causes the loss of any real or personal property (including animals or records) used by an animal enterprise, or any real or personal property of a person or entity having a connection to, relationship with, or transactions with an animal enterprise;
>
> (B) intentionally places a person in reasonable fear of the death of, or serious bodily injury to that person, a member of the immediate family (as defined in

---

[1] The statute defines an "animal enterprise" as:

> (A) a commercial or academic enterprise that uses or sells animals or animal products for profit, food or fiber production, agriculture, education, research, or testing;
> (B) a zoo, aquarium, animal shelter, pet store, breeder, furrier, circus, or rodeo, or other lawful competitive animal event; or
> (C) any fair or similar event intended to advance agricultural arts and sciences[.]

18 U.S.C. § 43(d)(1).

section 115) of that person, or a spouse or intimate partner of that person by a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation; or

(C) conspires or attempts to do so[.]

18 U.S.C. § 43(a).  Section (b) of the Act outlines the penalties for any violation of Section (a), which vary depending on the amount of economic damage caused and whether another person was placed in reasonable fear of bodily injury or suffered actual bodily injury.  *Id*. § 43(b)(1)-(5). Section (d) contains definitions for "animal enterprise," "course of conduct," and "economic damage."  *Id*. § 43(d)(1)-(3).  Notably, Congress defined "economic damage" (a term used only in the penalty provision of the Act) to mean "the replacement costs of lost or damaged property or records, the costs of repeating an interrupted or invalidated experiment, the loss of profits, or increased costs, including losses and increased costs resulting from threats, acts or vandalism, property damage, trespass, harassment, or intimidation," but not including "any lawful economic disruption (including a lawful boycott) that results from lawful public, governmental, or business reaction to the disclosure of information about an animal enterprise[.]"  *Id*. § 43(d)(3)(A)-(B).

Finally, Section (e) sets forth "Rules of Construction" for the Act and provides, *inter alia*, that nothing in this section shall be construed:

(1) to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution;

(2) to create new remedies for interference with activities protected by the free speech or free exercise clauses of the First Amendment to the Constitution, regardless of the point of view expressed, or to limit any existing legal remedies for such interference[.]

*Id*. § 43(e)(1)-(2).

4

Plaintiffs are five individuals who consider themselves to be fervent animal rights activists.  They filed suit on December 15, 2011, seeking a declaration that the AETA is unlawful on its face and as applied to Plaintiffs and an injunction striking it down.  *See* Compl. ¶ 10, Prayer for Relief.  Plaintiffs set forth three claims: overbreadth, vagueness, and content and viewpoint discrimination.  *Id*. ¶¶ 164-69.  Yet because Plaintiffs lack Article III standing and because their claims are not ripe, this suit must be dismissed for lack of subject matter jurisdiction.  Alternatively, this Court should dismiss Plaintiffs' suit for failure to state a claim, as Plaintiffs have not and cannot show that the AETA must be invalidated on either free speech or due process grounds.

## ARGUMENT

## I.  PLAINTIFFS' COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION.

### A.  Plaintiffs Lack Standing Because They Have Not Suffered Any Specific Present Objective Harm or Alleged a Threat of Specific Future Harm.

Article III of the Constitution limits the subject matter jurisdiction of federal courts to cases and controversies.  U.S. Const. art. III, § 2; *see also Allen v. Wright*, 468 U.S. 737, 750 (1984).  In the absence of an actual case or controversy, a court is without jurisdiction to decide a matter.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Thus, standing, "which enforces the Constitution's case-or-controversy requirement," is a threshold question, *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), and Plaintiffs must prove their standing to bring each claim of their Complaint, *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 47-48 (1st Cir. 2011).

To establish standing, a plaintiff must satisfy three elements.  First, a plaintiff must have suffered "an injury in fact – an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Second, there must be "a causal connection between the injury and the conduct complained of" such that the injury is "fairly traceable to the challenged action of the defendant[.]"  *Id*.  Finally, there must be a likelihood that the injury will be "redressed by a favorable decision."[2]  *Id*.

Here, Plaintiffs lack standing because they have not alleged any specific, actual harm.  In pre-enforcement challenges to criminal statutes, courts recognize two types of injuries.  *See Mangual v. Rotger-Sabat*, 317 F.3d 45, 56-57 (1st Cir. 2003); *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).  "The first is when 'the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution.'"  *Mangual*, 317 F.3d at 56-57 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1976)).  "The second type of injury is when a plaintiff 'is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences.'"  *Mangual*, 317 F.3d at 57 (quoting *N.H. Right to Life*, 99 F.3d at 13).  The mere claim of a "chill," however, is not sufficient to establish an injury in fact.  *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).  There must be

---

[2] Although courts relax *prudential* limitations on standing for a plaintiff who alleges that a statute is facially overbroad in violation of the First Amendment, a plaintiff must establish that he or she meets the "irreducible minimum" requirements of *constitutional* standing, including a showing that he or she has suffered some actual or threatened injury.  *Valley Forge Christian Coll. v. Am. United for Separation of Church and State*, 454 U.S. 464, 472 (1982); *see also Nat'l Org. for Marriage*, 649 F.3d at 46 ("[T]he constitutional requirements apply with equal force in every case.") (internal citations omitted).

an "objectively reasonable fear of prosecution." *R.I. Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 31 (1st Cir. 1999) (internal quotation omitted); *Babbitt*, 442 U.S. at 298 ("[P]ersons having no fears of [] prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.").

Plaintiffs have failed to allege either type of injury.  First, Plaintiffs have no concrete, actual intent to engage in specific activity at a specific time in the near future that will possibly subject them to the AETA.  Not one Plaintiff alleges an intent to travel in interstate commerce or use any facility of interstate commerce with the "purpose of damaging or interfering with the operations of an animal enterprise[.]"  18 U.S.C. § 43(a)(1); Compl. ¶¶ 67-161.  Nor do any of the Plaintiffs allege a plan to "intentionally damage[] or cause[] the loss of any real or personal property" used by an animal enterprise, or to engage in conduct involving "threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation" in order to "intentionally place[] a person in reasonable fear of the death of, or serious bodily injury to that person[.]"  18 U.S.C. § 43(a)(2); Compl. ¶¶ 67-161.  Because Plaintiffs have not established the "intention to engage" element, there is no likelihood that Plaintiffs will be injured by enforcement of the Act at any time in the near future.  *R.I. Ass'n of Realtors*, 199 F.3d at 31.

What Plaintiffs do claim is the existence of a "chill" from the operation of the statute.  In other words, Plaintiffs each claim to have foregone constitutionally protected conduct or speech because of fear of prosecution under the AETA.  For example, Plaintiffs claim they currently refrain from activity such as "investigat[ion of] the treatment of animals" by "lawfully" entering foie gras farms after "seeking permission" from the owner, Compl. ¶ 87; "lawfully document[ing] evidence of animal rights abuse," *id*. ¶ 111; and "pass[ing] out literature" on

proper rabbit care and other rabbit-related issues, " *id.* ¶ 131.  But the AETA does not "threaten

any cognizable interest of the plaintiffs," *Meese v. Keene*, 481 U.S. 465, 472 (1987), as there is

no basis under the Act for prosecution of any of these activities.   None of this activity involves

the deliberate damaging of personal property or other unlawful or violent actions such as

trespass, theft, or harassment – the type of conduct targeted by the statute.  *See* 18 U.S.C. § 43(a).

Rather, it is precisely the type of expressive conduct and speech the AETA exempts from its

reach.  *Id.* § 43(e).  Consequently, Plaintiffs' fear, however genuine, does not amount to the

"objectively reasonable fear" required to establish cognizable harm.  *See N.H. Right to Life*, 99

F.3d at 13.  As the Supreme Court held in *Laird v. Tatum*, allegations of a chill, "without more,"

are insufficient for Article III standing.  408 U.S. at 10.  A plaintiff must show that he is "either

presently or prospectively subject to the regulations, proscriptions, or compulsions that he [is]

challenging."  *Id.* at 11.  This, Plaintiffs have not done.[3]

    Compare Plaintiffs' allegations to those in *Ozonoff v. Berzak*, 744 F.2d 224 (1st Cir.

1984), or *Rhode Island Association of Realtors v. Whitehouse*, 199 F.3d 26 (1st Cir. 1999).  In

*Ozonoff*, the plaintiff challenged an Executive Order that required him to submit to a loyalty

screening if he wished to maintain his employment with the World Health Organization.  744

F.2d at 226-27.  He argued that the Order chilled him from "joining the organizations that he

wish[ed] to join and from expressing opinions that he [might] hold," for fear that he would not

pass the loyalty investigation and lose his job.  *Id.* at 227.  The First Circuit held that the plaintiff

---

[3] To the extent Plaintiffs fear they may be falsely prosecuted for activity that is not
actually prohibited by the statute, this fear is entirely too speculative to serve as a basis for
Article III standing.  *See Laird*, 408 U.S. at 13-14; *White v. United States*, 601 F.3d 545, 553 (6th
Cir. 2010).

had standing, as the Order did "take account of political associations and speech" and was "vague enough and general enough to suggest that a serious effort to comply would have an effect – a 'chilling effect' – upon [the plaintiff]." *Id.* at 228.  Similarly, in *Rhode Island Association of Realtors*, the First Circuit found that the plaintiff association had established an objectively reasonable chill in part because the association asserted its intention to engage in the proscribed activity of soliciting new members using public records and had demonstrated this intent by taking the concrete step of requesting the public records. 199 F.3d at 28.  The First Circuit noted that "there is simply no plausible way to read the statutory text so that it exonerates the Association's proposed solicitation." *Id.* at 31.  The law in question "prohibits precisely [such] conduct." *Id.*

Here, by contrast, Plaintiffs have not shown that the conduct from which they refrain is within the ambit of the AETA.  Nor have they shown that they face a genuine choice, like the plaintiff in *Ozonoff*, for Plaintiffs can engage in their proposed activities free from prosecution under the Act.  *See Ozonoff*, 744 F.2d at 229 (noting that the plaintiff had to choose between free association and keeping his job).  A close examination of Plaintiffs' allegations (and what Plaintiffs' fail to allege) confirms this:

Sarahjane Blum:  Plaintiff Blum claims she has "curtailed her animal rights activism significantly" because of her fear of prosecution, Compl.  ¶¶ 84, 85, refraining from:  advising and working with the Minneapolis Animal Rights Collective to raise public awareness of foie gras, *id.* ¶ 86; lawfully investigating the treatment of ducks and geese on foie gras farms by "seeking permission to enter the farm for the purpose of documenting conditions," *id.* ¶ 87; publicizing the results of her investigation through local and national events and on the internet,

including speaking publicly about the conditions on the farms and showing a film on the subject, *id*. ¶¶ 87-88; and organizing a letter-writing or protest campaign "explaining how foie gras is made, so as to pressure local restaurants to stop serving the product," *id*. ¶ 87.   None of this activity, however, is proscribed by the AETA, or even comes near the statute's reach.   Instead, it is the type of non-violent, expressive conduct explicitly exempt from the Act's coverage.   *See* 18 U.S.C. § 43(e).   To buttress her claim of reasonable fear of prosecution, Plaintiff points to an exhibit identified as a FBI memo that, in her words, "describes illegal entry onto a farm, videotaping the condition of animals there, and taking animals, all as violations of the [AETA]." Compl. ¶ 98.   But the memo only underscores the point that the statute is aimed at unlawful (illegal entry), destructive (taking of animals) conduct.   By Plaintiff's own allegations, she wishes to *lawfully* enter a farm, *with permission* from the owner, and does not intend to steal the animals.   *Id*. ¶ 87.   Her desired activity is not proscribed by the AETA.

Plaintiff says she worries that if her otherwise lawful actions lead to a loss of profit for any foie gras farm mentioned by name, she can be prosecuted under the Act.   *Id*. ¶ 93.   Yet, for reasons explained *infra* at 18-20, this fear is not objectively reasonable, as it is unmoored from the statute's text.   Although the AETA accounts for loss of profits in determining the proper penalty, one cannot be convicted under the statute merely for causing an animal enterprise to lose profits.   To violate the statute, a person must "intentionally damage[] or cause[] the loss of any real or personal property . . . used by an animal enterprise[.]"   18 U.S.C. § 43(a)(2)(A).   Even if one were to read the statute to criminalize "economic damage" such as lost profits, Congress made it clear that one cannot be held accountable for lost profits that occurs as a result of "lawful

public, governmental, or business reaction to the disclosure of information about an animal enterprise." *Id.* § 43(d)(3)(B).

Ryan Shapiro:  Plaintiff Shapiro's allegations of harm are too attenuated and abstract to establish Article III standing.  He claims he has been "chilled from participating in the kind of lawful protests and investigation of animal cruelty that gives energy to the animal rights movement," Compl. ¶ 115, and that he "wants to re-engage in the work of lawfully documenting evidence of animal rights abuse," and other "kind[s] of animal rights work he believes is necessary to bring about change," *id.* ¶ 111.  The most specific activity in which he claims he would like to partake – lawful protests – does not violate the AETA.  *See* 18 U.S.C. § 43(e)(1). And his remaining allegations provide no concrete, tangible examples of activities in which he would like to or intends to engage.  Moreover, Plaintiff Shapiro does not give shape to the difference between the type of work he is allegedly chilled from doing and that in which he is allegedly currently doing (leafleting, public speaking, and campaign work).  Compl. ¶ 111.

Lana Lehr:  Plaintiff Lehr has a history of advocacy around rabbit issues.  Compl. ¶ 120. In the past, she has encouraged businesses not to use rabbits as decor or as raffle prizes and has attended organized protests in front of stores that sell fur.  *Id.* ¶¶ 121, 124.  Now, however, she claims she is chilled from:  attending "aboveground and lawful" protests, *id.* ¶¶ 125-27; "bringing a few rabbits [] to restaurants that serve rabbit meat," *id.* ¶ 126; and "pass[ing] out literature at carnivals, fairs, and other events attended by rabbit breeders," *id.* ¶ 131.  Yet Plaintiff's proposed speech and lawful protests – with or without rabbits – does not involve conduct intended to physically damage a business or place someone in fear of bodily harm, and is expressly exempted from prosecution by the AETA's "rules of construction."  18 U.S.C.

11

§ 43(e)(1) (the statute shall not be construed to prohibit "peaceful picketing or other peaceful demonstration").

Lauren Gazzola:  Plaintiff Gazzola also alleges that she is "chilled" by the AETA, yet her allegations of a chill are so opaque and undefined as to make it impossible to determine what activity she claims to have foregone and whether that conduct falls within the scope of the statute.  For example, she claims she is chilled from "staunch and provocative political advocacy that does not amount to incitement or a true threat," Compl. ¶ 145, and that she understands that "theoretical advocacy of illegal action" and "lawful [] protest[s] in front of an individual's home, consistent with municipal and state ordinances limiting such activity, [and without] threatening statements" are both protected by the First Amendment, but that she is "chilled from again engaging in a campaign that includes both of these tactics,'" *id*. ¶¶ 142-43.  Because Plaintiff's allegations leave one guessing as to her desired action, Plaintiff has failed to establish a concrete, tangible injury sufficient for Article III standing. *See Lujan*, 504 U.S. at 560-61.

The most concrete allegation of a chill provided by Plaintiff Gazzola is that she removed the words "So go do it" from an internet post.  Compl. ¶ 147.  But there is simply no way that this phrase, added to an online posting, could be understood to violate the AETA.  By her own account, Plaintiff Gazzola published this statement online to describe her experience appearing before an Animal Law class at a law school in Chicago, not "for the purpose of damaging or interfering with the operations of an animal enterprise." 18 U.S.C. § 43(a).  Furthermore, the posting does not exhibit an intent to either damage personal property or place another individual in reasonable fear of death or serious bodily injury.  *Id.*  Although Plaintiff's past conviction under the AEPA may create within her a subjective fear of prosecution, that fear is not legally

12

cognizable in light of the text of the AETA and the conduct Plaintiff expresses a desire to undertake in the future.  In fact, *because of* her prior conviction under the AEPA, Plaintiff Gazzola, more than any other Plaintiff, should know what is and what is not subject to the statute's reach.  *See infra* at 21.

Iver Robert Johnson III:  Plaintiff Johnson fails to assert either a specific, identified activity in which he intends to engage or one from which he refrains from engaging because of the operation of the AETA.  *See* Compl. ¶¶ 149-161.  Rather, he baldly asserts that "the bulk of animal rights activists in the [New York City] area are chilled from engaging in protest-related activism out of fear of [] terrorist charges," *id*. ¶ 161, and that he has been "unable to convince others to work with him[.]" *id*. ¶ 159.  These allegations not only share the same flaw as Plaintiff Gazzola's – a failure to establish with any definiteness the activity he has foregone and, if that activity was undertaken, that he would be subject to the AETA – but they also raise questions regarding traceability and redressability, as it is unclear the government, or any decision by this Court, can give Plaintiff "a community to connect with."  *Id*. ¶ 161.[4]

---

[4] Plaintiffs also contend that their fear of prosecution is reasonable because they have either suffered past prosecution or been subject to scrutiny by law enforcement officers for their animal rights activism.  *See, e.g.*, Compl. ¶ 109 (Plaintiff Shapiro, alleging that his fear of prosecution is reasonable because he was mentioned in a FBI document in 2003); *id*. ¶ 129 (Plaintiff Lehr, alleging "extra scrunity" from law enforcement for her activism in 2009); *id*. ¶ 144 (Plaintiff Gazzola, alleging monitoring by the FBI); *id*. ¶ 157 (Plaintiff Johnson, alleging that he appeared on a "law enforcement watch list" in 2002).  But these allegations concerning investigations and prosecutions for activity done in the past – in some cases a decade ago – do not forgive Plaintiffs' failure to establish the very prerequisite for a finding of an objectively reasonable chill:  a desire to engage "in a course of conduct arguably affected with a constitutional interest, but proscribed by [the statute]." *Babbitt*, 442 U.S. at 298; *see also Osediacz v. City of Cranston*, 414 F.3d 136, 141 (1st Cir. 2005) (holding that "the party mounting a facial challenge [must] *at the very least* desire[] or intend[] to undertake activity within the compass of the challenged statute") (emphasis added).  Moreover, as Plaintiffs admit, only a "handful" of prosecutions have been brought under the AETA, *see* Compl. ¶ 53, and the Department of Justice made clear at the time of the AETA's enactment that the Department

In summary, upon examination of Plaintiffs' allegations, it is clear that Plaintiffs have not established an objectively reasonable chill necessary for Article III standing. While Plaintiffs may feel a subjective chill as a consequence of Plaintiffs' view that those acting for animal rights should never fall under the "terrorist" rubric or that animal rights activism – even that which violates the statute – is justified and should not be criminalized, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm[.]" *Laird*, 408 U.S. at 13-14; *see also Osediacz*, 414 F.3d at 142 ("Although offended by the [statute], [Plaintiffs have] sustained no injury in fact."). Because there is no credible threat of prosecution for the activities in which Plaintiffs wish to engage and no objectively reasonable chill, Plaintiffs' asserted injury is purely speculative, self-imposed, and insufficient for Article III standing. *See Lujan*, 504 U.S. at 560; *N.H. Right to Life*, 99 F.3d at 14.

### B.       Plaintiffs' Claims are not Ripe for Review.

In addition to standing concerns, this suit must be dismissed because Plaintiffs' claims are not ripe for review. "If standing is a question of who, then ripeness – which shares standing's constitutional and prudential pedigree – is a question of when." *R.I. Ass'n of Realtors*, 199 F.3d at 33 (internal citation omitted). The ripeness doctrine is intended to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). Thus, similar to the test for standing, Plaintiffs must establish the ripeness of their claims by showing that the issues presented are fit

---

"does not prosecute and does not wish to prosecute those who lawfully seek to persuade others" and that "nothing in the law prohibits any expressive conduct protected by the first amendment." *Animal Enterprise Terrorism Act: Hearing Before Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 109th Cong. 6 (2006) (testimony of Brent McIntosh, Deputy Assistant Attorney General, Dept. of Justice). For these additional reasons, Plaintiffs have not established an objectively reasonable chill.

for review (*i.e.*, that there is finality, definiteness, and resolution does not depend on facts not yet

developed), and that "hardship looms" (*i.e.,* that Plaintiffs face a "direct and immediate

dilemma"). *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995). In

the context of a pre-enforcement challenge, the First Circuit has held that:

> a party must have *concrete plans* to engage *immediately (or nearly so)* in an
> *arguably proscribed activity*. This gives a precise shape to disobedience, posing a
> specific legal question fit for judicial review. A showing that the challenged
> statute, fairly read, thwarts implementation of the plan adds the element of
> hardship.

*R.I. Ass'n of Realtors*, 199 F.3d at 33 (emphasis added).

Plaintiffs' case fails to meet this test. As explained *supra* at 9-13, Plaintiffs have no such

defined, concrete plans. For example, Plaintiff Lehr wishes to "pass out literature at carnivals,

fairs, and other events attended by rabbit breeders," Compl. ¶ 131, but does not state when or

where she would engage in this activity. Similarly, Plaintiff Gazzola claims she is chilled from

"staunch and provocative political advocacy," *id.* ¶ 145, but provides no indication of what

"staunch and provocative" advocacy entails or when she will engage in it. And even if such

definiteness and imminency were alleged, there is no "direct and immediate dilemma" for

Plaintiffs, as the AETA, "fairly read," does not criminalize Plaintiffs' proposed activities. *Ernst*

*& Young*, 45 F.3d at 535; *R.I. Ass'n of Realtors*, 199 F.3d at 33.

## II.    PLAINTIFFS' COMPLAINT MUST BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM.

Were the Court to conclude that Plaintiffs have standing and their claims are ripe,

Plaintiffs' Complaint must nonetheless be dismissed for failure to state a claim upon which relief

can be granted because the challenged provisions are plainly constitutional. A motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(6) should be granted if a plaintiff fails to plead "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). While a court "must take all the factual allegations in the complaint as true," it is "not

bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*,

478 U.S. 265, 286 (1986). In addressing a facial challenge, a court "must be careful not to go

beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases,"

*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008), for "[a]lthough

passing on the validity of a law wholesale may be efficient in the abstract, any gain is often offset

by losing the lessons taught by the particular, to which common law method normally looks[,]"

*Sabri v. United States*, 541 U.S. 600, 609-610 (2004).

### A.       The AETA is Not Unconstitutionally Overbroad.

Plaintiffs seek to invalidate the AETA on the grounds that it is overly broad in violation

of the First Amendment. The Supreme Court has cautioned, however, that the First Amendment

overbreadth doctrine is "strong medicine" that should not be "casually employed." *United States*

*v. Williams*, 553 U.S. 285, 293 (2008) (internal quotation marks omitted). Consequently, a

plaintiff seeking invalidation on overbreadth grounds bears a heavy burden: he or she must show

that the law "reaches a *substantial amount* of constitutionally protected conduct." *Vill. of*

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982) (emphasis added).

The "mere fact that one can conceive of *some* impermissible applications of a statute is not

sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of L.A.*

*v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984) (emphasis added).

Plaintiffs cannot show that the AETA reaches a substantial amount of constitutionally

protected activity because the statute is not aimed at speech. *See Virginia v. Hicks*, 539 U.S. 113,

122 (2003).  Rather, it is aimed at conduct that has the purpose of damaging or interfering with a

business with an intent to either cause property damage or loss or place a person in fear of bodily

harm via acts such as vandalism or trespass.[5]  *See* 18 U.S.C. § 43(a).  Not only do the words

"damaging," "interfering," "damages or causes the loss of any real or personal property," and

"course of conduct" signify as much, but the Act expressly states that it does not prohibit any

expressive conduct or speech protected by the First Amendment.  *See id*. § 43(e)(1), (2).  Given

these "rules of construction," it is difficult to conceive of any "impermissible applications," let

alone a *substantial* overbreadth problem.  *Taxpayers for Vincent*, 466 U.S. at 800.[6]

Despite the "plainly legitimate sweep" of the AETA,  *Hill v. Colorado*, 530 U.S. 703, 732

(2000), Plaintiffs contend that the law is overbroad in that it covers activities such as "protesting,

picketing, [and] dissemination of information" if these activities lead to lost profits or increased

costs (*i.e.,* hiring a security guard to monitor protestors) for an animal enterprise.  Compl.  ¶¶ 4-5,

34.  Plaintiffs' theory appears to be that the term "personal property" in the offense section of the

AETA includes lost profits, so that a person who intentionally "damages" or "causes the loss of"

such profits through peaceful protest or other expressive activity would face criminal liability

under the statute.  *See id*. ¶ 5.  But again, a simple reference to the statute's "rules of

construction" proves Plaintiffs' contention to be unfounded.  If Plaintiffs' hypothetical picketers,

---

[5] The statute does criminalize certain types of speech – namely, "threats," "harassment" or "intimidation" that intentionally place a person in reasonable fear of death or bodily injury.  18 U.S.C. § 43(a)(2)(B).  But as discussed *infra* at 20-21, those types of speech are not protected by the First Amendment.

[6] The only federal court to address the constitutionality of the AETA upheld the Act in the face of both overbreadth and vagueness attacks.  *See United States v. Buddenberg*, 2009 WL 3485937 (N.D. Cal. Oct. 28, 2009) (holding that "the AETA's focus is not on speech but rather on conduct" and that the same terms challenged here are not unconstitutionally overbroad).

peacefully protesting at a business that sells animal products, were arrested, charges could not be brought under the AETA, for the statute clearly provides that it does not cover "*peaceful picketing or other peaceful demonstration*." 18 U.S.C. § 43(e)(1) (emphasis added).

Even without reference to the "rules of construction," a straightforward, logical reading of the other portions of the statute demonstrates that an individual cannot be convicted merely for causing an animal enterprise to lose profits. First, the phrase "intentionally damages or causes the loss of any real or personal property" in the offense section of the statute, *id.* § 43(a)(2)(A), has to be construed in conjunction with the words around it. *See Deal v. United States*, 508 U.S. 129, 132 (1993) (It is a "fundamental principle of statutory construction . . . that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used."); *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961) ("[A] word is known by the company it keeps"). The statute identifies "animals or records" as examples of the type of "personal property" at issue, thus signifying that "damages or causes the loss of" was intended to cover damage or harm to *tangible* property – not harm to or loss of intangible, not-yet-realized profits. 18 U.S.C. § 43(a)(2)(A). Furthermore, the real or personal property in question must be "*used by* an animal enterprise," *id.* (emphasis added), again indicating that the statute is directed at those who intentionally cause damage to or loss of tangible property, not merely a decrease in profits.

Second, Congress' use of the term "economic damage" in the penalties provision of the statute (Section (b)), but omission of the modifier "economic" in the offense provision (Section (a)) is significant. As the First Circuit has recognized, "when Congress uses certain words in one part of a statute, but omits them in another, an inquiring court should presume that this

differential draftsmanship was deliberate." *United States v. Ahlers*, 305 F.3d 54, 59-60 (1st Cir.

2002).  Here, Congress clearly knew how to specify when it meant "economic damages" because

it used that exact term in the penalties provision of the statute.  *See* 18 U.S.C. §§ 43(b)(2)(A),

43(b)(3)(A), 43(b)(4)(A) (imposing range penalties based in part on whether "the offense results

in economic damage," and the amount of that economic damage).  "The offense" refers to the

intentional acts specified in Sections (a)(2)(A) and (a)(2)(B), neither of which include the term

"economic damage."  Thus, economic damages can only be taken into account in determining

what penalty to impose once a violation of Section (a)(2)(A) or (a)(2)(B) has been found.  They

cannot, standing alone, give rise to liability under the statute.  *See Buddenberg*, 2009 WL

3485937 at *6 ("Any economic damages that factor into the penalty must result from the

violation, not from other conduct that might take place simultaneously (*e.g.*, at a demonstration

where protected and criminal conduct occurs.)").  If Congress had intended to include loss of

profits as an actionable offense, it would have included the defined term "economic damage" in

the offense provision, but it did not, even when amending the AEPA in 2006 to what is now the

AETA.

Finally, if there is any remaining doubt about the limited and legitimate reach of the

AETA, Congress' definition of "economic damage" settles the question.  As noted above,

Section (b) provides that once a person is found guilty of "a violation of section (a)," he or she

can be punished to varying degrees depending on the economic damage or bodily harm resulting

from the offense.  18 U.S.C. § 43(b).  Congress defined "economic damage" to include "loss of

profits[] or increased costs," but explicitly exempted from the definition "any lawful disruption

(including a lawful boycott) that results from lawful public, governmental, or business reaction to

19

the disclosure of information about an animal enterprise." *Id*. § 43(d)(3).  In defining "economic

damage" to exclude "any lawful economic disruption," Congress made it imminently clear that

one cannot be punished – to any degree – for the very thing Plaintiffs argue is proscribed:  loss or

profits due to public reaction to Plaintiffs' dissemination of information, Compl.  ¶¶ 4-5, 34.  If

the *degree of one's penalty* cannot turn on lawful public reaction to the dissemination of

information about animal enterprises, certainly *one's very conviction* cannot rest on it.[7]

To the extent the statute covers speech or expressive conduct, it is speech or conduct of a

threatening, inciteful, or violent nature – that which has no sanctuary in the First Amendment.

*See Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) ("A physical assault is not by any stretch of

the imagination expressive conduct protected by the First Amendment."); *R.A.V. v. City of St.*

*Paul*, 505 U.S. 377, 388 (1992) ("[T]hreats of violence are outside the First Amendment");

---

[7] In addition, as the Supreme Court has stated, a "statute cannot be divorced from the circumstances existing at the time it was passed, and from the evil which Congress sought to correct and prevent." *United States v. Champlin Ref. Co.*, 341 U.S. 290, 297 (1951).  Here, the legislative history is clear that the AETA was passed as a reaction to "an increase in the number and the severity of criminal acts and intimidation against those engaged in animal enterprises," including acts such as "arson, pouring acid on cars, mailing razor blades, and defacing victims' homes."  152 Cong. Rec. H8591 (daily ed. Nov. 13, 2006) (House consideration and passage of S. 3880).  Thus, loss of profits due to lawful demonstrations was not an "evil" Congress sought to address; rather, it was a right Congress sought to protect.  In fact, Congress was emphatic that "nothing in this bill shall be construed to prohibit any expressive conduct protected by the first amendment, nor shall it criminalize nonviolent activities designed to change public policy or private conduct." *Id.*; *see also* 152 Cong. Rec. S10793-05 (daily ed. Sept. 29, 2006) (Senate consideration and passage of S. 3880) ("The current version of the bill . . . clarifies that the substantive offense created by the bill requires proof of intentional damage to real or personal property, not simply a loss of profits."); *Animal Enterprise Terrorism Act: Hearing Before Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. On the Judiciary*, 109th Cong. 26 (statement of Rep. Feeney, Member, H. Comm. On the Judiciary) ("You're not responsible for any of the definition [of "economic damage"] unless you have intentionally damaged or destroyed property or threatened somebody's life or bodily injury. . . . If you commit a crime, then you may be responsible for some of those damages, and then the definition of what you're responsible for is important.  But as long as you have not committed a crime, [] there's nothing in this bill that would make you a target of obligation for those economic damages.").

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) ("It has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."); *cf. Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (speech inciting imminent lawless action may be restricted).  Plaintiff Gazzola's conviction under the AETA's predecessor – the Animal Enterprise Protection Act – demonstrates as much.  In *United States v. Fullmer*, the Third Circuit upheld Plaintiff Gazzola's conviction under the AEPA based on her personal participation in a demonstration at a private residence, during which Gazzola threatened to burn down the individual's home and warned that the police could not protect him.  584 F.3d 132, 157 (3d Cir. 2009).  This speech, coupled with her other conduct, including "the planning and execution of SHAC's illegal activities," constituted a "true threat," not protected by the First Amendment.  *Id.*  The Court recognized, however, that Gazzola and her co-defendants' other speech and expressive conduct, such as "[c]oordinating demonstrations at the homes of [animal enterprise] employees, under the parameters set forth in injunctions, is not unlawful [under the AEPA]."  *Id.* at 155.  And it is not unlawful under the AETA.[8]

"When a federal court is dealing with a federal statute challenged as overbroad, it should [] construe the statute to avoid constitutional problems, if the statute is subject to such a limiting construction."  *New York v. Ferber*, 458 U.S. 747, 769 n.24 (1982).  Here, there is

---

[8] Plaintiffs also claim that the definition of "animal enterprise" is impermissibly overbroad, Compl. ¶ 5, but this argument should be rejected, for Congress' expansion of the Act's coverage to include not only animal enterprise organizations, but also those who do business with them, is of no "constitutional significance."  *McCullen v. Coakley*, 571 F.3d 167, 181 (1st Cir. 2009).  The intentionally violent, damaging conduct the AETA proscribes has no constitutional value whether it is directed at fur stores, medical research facilities, or third parties that interact with the former entities.

unquestionably a limiting construction, based on the terms of the offense provision, the penalties

provision, and, most significantly, on the AETA's own limiting *instruction* – that it not be read to

prohibit any expressive conduct or speech protected by the First Amendment.  18 U.S.C. § 43(e).

Consequently, Plaintiffs cannot establish that "substantial" overbreadth exists.  *See Ferber*, 458

U.S. at 771-72.  If the AETA is, in fact, ever applied unconstitutionally in the future, such a

violation "can still be remedied through as-applied litigation[.]"  *Hicks*, 539 U.S. at 124.

     **B.**     **The AETA is Not Impermissibly Vague.**

     "A conviction fails to comport with due process if the statute under which it is obtained

fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so

standardless that it authorizes or encourages seriously discriminatory enforcement."  *Williams*,

553 U.S. at 304.  Plaintiffs argue that the AETA is impermissibly vague because it "leave[s]

[them and other] citizens uninformed as to whether they will run afoul of the law's prohibitions,"

and it fails to "guide law enforcement discretion."  Compl. ¶¶ 10, 41, 167.  Yet Plaintiffs cannot

succeed in either an as-applied or facial vagueness attack.

     To begin, the statute is not vague as to Plaintiffs' desired conduct.  The Supreme Court

has made it clear that courts are to "consider whether a statute is vague as applied to the

particular facts at issue[.]"  *Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2719, 2721

(2010).  Here, Plaintiffs claim they would like to engage in activities such as lawfully entering a

foie gras farm (with permission) to investigate the treatment of ducks, and then publicize the

results of the investigation, Compl. ¶¶ 87-88; distributing literature on the treatment of rabbits at

public events,  *id.* ¶ 131; and engaging in sustained and targeted yet peaceful "protest-related

activism," *id.* ¶ 161.  But the AETA is not vague as to these activities; it explicitly exempts them

from prosecution under the statute.  *See* 18 U.S.C. § 43(e).  This Court need not, and should not

under *Humanitarian Law Project*, conjure up hypothetical scenarios on the fringes of the

statute's reach to test its alleged vagueness, for "[w]hatever force [plaintiffs' hypotheticals]

might have in the abstract, they are beside the point here."  130 S.Ct. at 2721 (plaintiffs "cannot

seek refuge in imaginary cases that straddle the boundar[ies of the statute's text]").  Plaintiffs'

proposed conduct is clearly beyond the scope of the statute, and for this reason alone, Plaintiffs

cannot prevail in their pre-enforcement vagueness challenge.  *Id.*

　　　Yet Plaintiffs' facial vagueness challenge fails on its merits for at least three additional

reasons.  First, since the statute does not apply to protected speech, and instead is aimed at

conduct, Plaintiffs must prove that it is vague in all of its applications.  *Vill. of Hoffman Estates*,

455 U.S. at 497 (A law that "satisfies the overbreadth test may nevertheless be challenged on its

face as unduly vague, in violation of due process.  To succeed, however, the complainant must

demonstrate that the law is impermissibly vague in all of its application."); *see also id.* n.5

(explaining that a "facial" challenge "means a claim that the law is 'invalid *in toto* – and

therefore incapable of any valid application'") (quoting *Steffel v. Thompson*, 415 U.S. 452, 474

(1974)).  This Plaintiffs clearly cannot do, as one can easily imagine a valid application of the

law to, *i.e.*, an individual that travels across state lines with the purpose of damaging an animal

enterprise and does, in fact, intentionally damage the personal property of the enterprise by

bombing its front facade.

　　　Second, the scienter requirement in the statute "further reduces any potential for

vagueness[.]"  *Humanitarian Law Project*, 130 S.Ct. at 2720; *see also Hill*, 530 U.S. at 732

(rejecting a vagueness challenge to a statute that prevented individuals from "knowingly" coming

within eight feet of another person to engage in certain actions).  The AETA requires that one

have *a purpose* of damaging or interfering with an animal enterprise, and that one, "in connection

with that purpose," *intentionally* damage or cause the loss of property or threaten another or

conspire or attempt to do so.  18 U.S.C. § 43(a).  Because an individual will not face criminal

liability if he or she unintentionally damages property used by an animal enterprise in the course

of engaging in speech or lawful expressive activity such as a peaceful protests, "the Act cannot

be described as 'a trap for those who act in good faith.'"  *Gonzales v. Carhart*, 550 U.S. 124,

149-50 (2007) (quoting *Colautti v. Franklin*, 439 U.S. 379, 395 (1979)).  Likewise, because the

government must present the trier of fact with evidence that establishes that, beyond a reasonable

doubt, the accused had the requisite intent, the scienter requirement alleviates concerns of

arbitrary enforcement.  *Id*. at 150 ("The scienter requirements narrow the scope of the Act's

prohibition and limit prosecutorial discretion.").

Third, the terms of the statute on which Plaintiffs focus their vagueness attack are not

unconstitutionally vague.  Plaintiffs attempt to find support for their vagueness arguments by

plucking the terms "damaging or interfering with," "damages or causes the loss of any real or

personal property," "course of conduct," and "attempting to do so," from the larger statutory

context.  But when these terms are read in light of neighboring words and provisions, Plaintiffs'

argument fails.  For example, Plaintiffs claim that "course of conduct" in Section (a)(2)(B) is

unconstitutionally vague because there is "no set time frame specified," and "it is not clear if an

actionable course of conduct could include disparate acts across years, or even decades."  Compl.

¶¶ 41, 167.  They contend that the definition of the term – "a pattern of conduct composed of 2 or

more acts, evidencing a continuity of purpose" – does not help, for "[t]he requirement of

24

'continuity of purpose' adds to this uncertainty, as an animal rights activist's larger political purpose would presumably tie together otherwise attenuated acts of protest." *Id*. ¶ 41.  But Plaintiffs ignore the scienter requirement in the offense:  One must have an *intention* to place a *specific person in* fear, and that intention must be exhibited by and carried out through more than a single instance of "threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation."  18 U.S.C. § 43(a)(2)(B).  Thus, the "course of conduct" and "pattern of conduct" (used in the definition) will not "tie together otherwise attenuated acts," because the offense requires that the illegal acts be purposefully done to cause fear in a specific individual. *Id*.

Likewise, Plaintiffs claim the phrases "damaging or interfering with" and "damages or causes the loss of any real or personal property" are unconstitutionally vague in that they may criminalize a "labor picket that leads would-be customers to avoid shopping at a store that sells meat products," "a lawful investigation that causes diners to cease ordering foie gras, [] an anti-fur protest that causes a fur store to hire extra security guards, or the taking of documentary footage of farms or slaughterhouses and the dissemination of that footage if it results in a loss or profits for the business."  Compl. ¶ 38.  But in attacking these terms in Section (a), Plaintiffs ignore Section (e), which limits Section (a) to ensure protection for precisely this type of activity. *See* 18 U.S.C. § 43(e).  In addition, for the reasons explained *supra* at 18-20, the statute does not criminalize expressions that cause the mere loss of profits.  Nor can one be convicted for "*unlawful* third party reaction that may be caused by a protestor or advocate's lawful disclosure of information or other advocacy efforts," Compl. ¶ 49, for if the advocate herself was not engaged in illegal means or speech that invited imminent lawlessness (and consequently is

not protected by the First Amendment), it is difficult to imagine how the government could prove

the scienter requirement.  And, what is more, the advocate's non-violent speech or expressive

activity would be exempted by Section (e).  *See* 18 U.S.C. § 43(e) (rules of construction).[9]

Overall, the terms of concern to Plaintiffs are not "wholly subjective" terms of the type

courts have declared void for vagueness.  *See Williams*, 553 U.S. at 306 (noting that the Court

has struck statutes tying criminal culpability to whether the defendant's conduct was "annoying"

or "indecent").  Rather, they are terms that persons of ordinary intelligence can understand, and

when the statute is read in a straightforward, logical way, with an eye toward Congress' intent,

"'it is clear what the [law] as a whole prohibits:'" intentional, violent, unlawful conduct outside

the reach of the First Amendment.  *Hill*, 530 U.S. at 733 (quoting *Grayned v. City of Rockford*,

408 U.S. 104, 110 (1972)).  While one can "conjure up hypothetical cases in which the meaning

of these terms will be in nice question," *Am. Commc'n Assn. v. Douds*, 339 U.S. 382, 412 (1950),

"speculation about possible vagueness in hypothetical situations not before the Court will not

support a facial attack on a statute when it is surely valid in the vast majority of its intended

---

[9] Plaintiffs' challenges to "attempting to do so" in Section (a)(2)(C) and the reference to the First Amendment in Section (e) should be rejected out of hand.  *See* Compl. ¶¶ 42, 51-52. First, Plaintiffs' claim that "attempting to do so" refers back to (a)(1) and not to (2)(A) or (2)(B) and consequently criminalizes "with nothing more, a conspiracy or attempt to travel or use interstate commerce for the purpose of damaging or interfering with the operations of an animal enterprise," Compl. ¶ 42, strains credulity.  Employing a common sense reading of the statute, one can see that "conspires or attempts to do so" refers to "intentionally damages" or "intentionally places a person in reasonable fear."  18 U.S.C. § 43(a).  Second, Plaintiffs challenge the clarity of the "rules of construction," *id*. § 43(e), because they exempt activity "protected [by] the First Amendment," which Plaintiffs claim is "hardly obvious to the legal profession, much less the public," Compl. ¶ 51.  Yet, with this lawsuit, Plaintiffs demonstrate that they do, in fact, have an understanding of what "protected by the First Amendment" means. *See, e.g.*, Compl. ¶¶ 4, 114 (acknowledging that peaceful protests are protected), ¶ 142 (Plaintiff Gazzola "understands that theoretical advocacy of illegal action . . . is protected by the First Amendment").  The contention that the "rules of construction" are "effectively meaningless," *id*. ¶ 52, is without merit and undermined by Plaintiffs' own allegations.

applications." *Hill*, 530 U.S. at 733 (internal quotation omitted).  Because the AETA is not vague as to Plaintiffs' proposed conduct and is clearly valid in the vast majority of its applications, Plaintiffs' vagueness claim must fail.

       **C.**      **The AETA is Viewpoint and Content Neutral**.

Plaintiffs' third and final cause of action, that the AETA violates the First Amendment "because it targets animal rights activists and discriminates based on content and viewpoint," must also be dismissed for failure to state a claim.  Compl. ¶ 169.

As previously stated, the AETA is directed at criminal conduct, not protected speech. Moreover, nothing in the statutory language or legislative history suggests that the government adopted the AETA because of a disagreement with the message or viewpoint of any one group. In fact, the AETA specifically provides that the Act is not intended to interfere with "activities protected by the free speech or free exercise clauses of the First Amendment [], *regardless of the point of view expressed . . . .*"  18 U.S.C. § 43(e)(2) (emphasis added).  The Act was passed in response to complaints by "businesses and nonprofits and their employees," of being "stalked, harassed, intimidated . . . even physically assaulted."  *Animal Enterprise Terrorism Act: Hearing Before Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 109th Cong. 2 (2006) (statement of Rep. Scott, Member of Subcomm.).  It was designed to deter "extreme tactics" and "campaign[s] of threats, harassment, intimidation and fear-mongering" against animal enterprises and those associated with them.  *Id*.  Thus, its aim is to prevent violence, not any particular message.  The fact that the Act was passed in response to the actions of animal rights extremists does not render it unconstitutional.  *See Hill*, 530 U.S. at 724 ("[T]he contention that a statute is 'viewpoint based' simply because its enactment was

motivated by the conduct of the partisans on one side of a debate is without support.").  As the Supreme Court has recognized, "[t]he antipicketing ordinance upheld in *Frisby v. Schultz*, 487 U.S. 474 [] (1988) . . . was obviously enacted in response to the activities of anti-abortion protesters . . . ."  *Id.* at 725.  Nonetheless, the Court "summarily concluded that the statute was content neutral." *Id.*

An examination of courts' uniform rejection of similar First Amendment challenges to the Freedom of Access to Clinic Entrances Act ("FACE"), which prohibits intentional interference or damage to reproductive health services providers, is instructive.  For example, the Second Circuit, like all of its sister circuits to consider the constitutionality of FACE, held that the text of the statute makes it clear that FACE "seeks to govern all people who obstruct the provision of reproductive health services.  And it does so regardless of whether the obstruction is or is not motivated by opposition to abortion."  *United States v. Weslin*, 156 F.3d 292, 296 (2d Cir. 1998).  "'FACE would prohibit striking employees from obstructing access to a clinic in order to stop women from getting abortions, even if the workers were carrying signs that said 'We are underpaid!' rather than 'Abortion is wrong!''"  *Id.* at 297 (quoting *United States v. Dinwiddie*, 76 F.3d 913, 923 (8th Cir. 1996) (also upholding constitutionality of FACE)).  Although most of those prosecuted under FACE may be anti-abortion protestors, this fact is irrelevant, for the "First Amendment does not recognize disparate impact claims."  *Id.*

So it is with the AETA.  In fact, Plaintiffs themselves postulate that labor picketers protesting unfair labor practices outside a meat store can be prosecuted under the statute.  Compl. ¶ 5.  Likewise, if one throws a brick through a laboratory window with the intent to instill fear in another, he or she could potentially be prosecuted under the Act, regardless of whether the note

28

tied to the brick says "Stop research on animals now!" or "Better pay for lab workers now!" *See id.* § 43(a)(2)(B).  Like FACE, the AETA contains no requirement that offenders intend to communicate a certain message, or any message at all.  *See Weslin*, 156 F.3d at 297.  And the fact that only self-identified animal rights activists have been prosecuted under the AETA is constitutionally inconsequential.  *See McCullen*, 571 F.3d at 177 ("[T]he mere fact that a content-neutral law has a disparate impact on particular kinds of speech is insufficient, without more, to ground an inference that the disparity results from a content-based preference.").

The government has a important interest in ensuring that commercial and academic enterprises that use animals to produce food and medicines and conduct research are permitted to conduct their lawful businesses without being subjected to acts of violence, destruction, intimidation, and harassment.  The AETA advances that interest and is narrowly tailored because it proscribes only conduct and very limited categories of speech (*i.e.*, threats, harassment, or intimidation that intentionally place a person in reasonable fear of death or serious injury) that are not protected by the First Amendment.

## **CONCLUSION**

Based on the allegations in the Complaint, there is no question that Plaintiffs care deeply and passionately about the rights and treatment of animals.  Nonetheless, Plaintiffs' interpretation of the AETA to proscribe the activities they claim to have foregone is not objectively reasonable.  In reality, people write articles, make films, and send letters-to-the-editor all the time about the practices of companies dealing with animals and animal products.  People freely organize and engage in lawful and peaceful protests to sway public opinion or encourage businesses to change certain practices.  This type of advocacy is not proscribed by or prosecuted under the AETA.

29

Because Plaintiffs' ideological disagreement with the Act, although genuine, is insufficient for

Article III standing, because the case is not ripe, and because the AETA is constitutional under

both the First and Fifth Amendments, Plaintiffs' Complaint must be dismissed.


Dated: March 9, 2012                              Respectfully submitted,


                                                  TONY WEST
                                                  Assistant Attorney General

                                                  JOHN R. GRIFFITHS
                                                  Assistant Director
                                                  Federal Programs Branch

                                                   */s/ Deanna L. Durrett*
                                                  DEANNA L. DURRETT (NY Bar)
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch
                                                  Tel: (212) 264-9232
                                                  Fax: (212) 264-1916
                                                  Mailing Address:
                                                  26 Federal Plaza, Room 346
                                                  New York, NY 10278

                                                  *Counsel for Defendant*

### Certificate of Service
        I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on March 9, 2012.

                                                   */s/ Deanna L. Durrett*
                                                  DEANNA L. DURRETT
                                                  United States Department of Justice
                                                  Civil Division, Federal Programs Branch