**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                      )
SARAHJANE BLUM, *et al.*,                  )
                                                      )          Civil Action No. 1:11-cv-12229-JLT
                          Plaintiffs,            )
                                                      )
            v.                                       )
                                                      )          Leave to File Excess Pages GRANTED on
ERIC HOLDER, *in his official capacity*   )          April 27, 2012
*as Attorney General of the United States*  )
*of America*,                                  )
                                                      )
                          Defendant.          )
_____)

<u>**REPLY IN SUPPORT OF MOTION TO DISMISS**</u>
<u>**BY DEFENDANT ERIC HOLDER**</u>

# TABLE OF CONTENTS

**PAGES**

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   PLAINTIFFS LACK STANDING TO CHALLENGE ANY OF THE PROVISIONS
     OF THE AETA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   Section (a)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.   Section (a)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     C.   Plaintiff Johnson. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.  PLAINTIFFS' CLAIMS ARE NOT RIPE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF
     CAN BE GRANTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.   The AETA is Not Unconstitutionally Overbroad. . . . . . . . . . . . . . . . . . . . . . . . 10

     B.   The AETA is Not Impermissibly Vague. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     C.   The AETA is Viewpoint and Content Neutral. . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGES**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Berner v. Delahanty,*
    129 F.3d 20 (1st Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Boos v. Barry,*
    485 U.S. 312 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Brandenburg v. Ohio,*
    395 U.S. 444 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Broadrick v. Oklahoma,*
    413 U.S. 601 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brown v. Gardner,*
    513 U.S. 115 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*CISPES v. FBI,*
    770 F.2d 468 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Clinton v. City of New York,*
    524 U.S. 417 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Corley v. United States,*
    556 U.S. 303 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dormal v. Satti,*
    862 F.2d 432 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Haley v. City of Boston,*
    657 F.3d 39 (1st Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Hastings College of the Law v. Martinez,*
    130 S. Ct. 2971 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hill v. Colorado,*
    530 U.S. 703 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20

*Holder v. Humanitarian Law Project*,
130 S. Ct. 2705 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Hutchins v. District of Columbia*,
188 F.3d 531 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Katz v. Pershing, LLC*,
672 F.3d 64 (1st Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*King v. St. Vincent's Hospital*,
502 U.S. 215 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Laird v. Tatum*,
408 U.S. 1 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Mangual v. Roger-Sabat*,
317 F.3d 45 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McGuire v. Reilly*,
260 F.3d 36 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Nat'l Org. For Marriage v. McKee*,
649 F.3d 34 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

*N.H. Right to Life v. Gardner*,
99 F.3d 8 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*R.I. Ass'n of Realtors v. Whitehouse*,
199 F.3d 26 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Schleifer v. City of Charlottesville*,
159 F.3d 843 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Skilling v. United States*,
130 S.Ct. 2896 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Simon v. Eastern Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Sullivan v. City of Augusta,*
    511 F.3d 16 (1st Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*United States v. Bird,*
    124 F.3d 667 (5th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Buddenberg,*
    2009 WL 3485937 (N.D. Cal. Oct. 28, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Fullmer,*
    584 F.3d 132 (3d Cir. 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Shrader,*
    --- F.3d ----, 2012 WL 1111654 (4th Cir. April 4, 2012).. . . . . . . . . . . . . . . . . . . . . 18

*United States v. Shrader,*
    Slip Copy, 2010 WL 2218755 (S.D. W.Va. June 2, 2010). . . . . . . . . . . . . . . . . . . . . 18

*United States v. Williams,*
    553 U.S. 285 (2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14, 15

*Virginia v. Am. Booksellers Ass'n,*
    484 U.S. 383 (1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Virginia v. Black,*
    538 U.S. 343 (2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Virginia v. Hicks,*
    539 U.S. 113 (2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## STATUTES

18 U.S.C. § 43 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 43 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## MISCELLANEOUS

*Animal Enterprise Terrorism Act: Hearing Before Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. On the Judiciary*, 109th Cong. 34. . . . . . . . . . . . . . . . . . . . . 4

152 Cong. Rec. H8590 (daily ed. Nov. 12, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 23

## INTRODUCTION

With this lawsuit, Plaintiffs seek an extreme remedy:  total invalidation of an act of Congress.  Plaintiffs argue that the Animal Enterprise Terrorism Act ("AETA") must be struck down in its entirety because it violates both the First and the Fifth Amendments of the Constitution.  But to make their case, Plaintiffs ask the Court to do two things courts are (for good reason) loathe to do.  First, Plaintiffs ask the Court to adjudicate a pre-enforcement challenge based on Plaintiffs' subjective fear of prosecution under the AETA.  Second, Plaintiffs invite the Court to interpret the AETA by examining select words in isolation with complete disregard for entire provisions of the Act.  The Court should reject both invitations.  When the statute is read as a whole and in accordance with the "rules of construction" provided by Congress, it is clear what the law does and does not proscribe.  Peaceful protests, public speaking, non-violent advocacy, and other First Amendment activity are outside the statute's scope.  Consequently, Plaintiffs' alleged fears of prosecution for engaging in such activities are not objectively reasonable, and Plaintiffs cannot show that the Act is substantially overbroad compared to its legitimate sweep, vague in the vast number of its applications, or aimed at certain – or any – political speech.  Plaintiffs' Complaint must be dismissed.

## ARGUMENT

### I.    PLAINTIFFS LACK STANDING TO CHALLENGE ANY OF THE PROVISIONS OF THE AETA.

Plaintiffs argue that they have standing to challenge the AETA because it has "chilled their constitutionally protected speech."  Pl. Opp. at 2.  According to Plaintiffs, "[n]othing more is needed under Article III."  *Id.*  But that is not the case.  "The mere allegation of a 'chill' [] will not suffice to open the doors to federal court."  *Nat'l Org. For Marriage v. McKee*, 649 F.3d 34,

1

47 (1st Cir. 2011).  Plaintiffs must provide concrete allegations of chill, not amorphous allegations of what Plaintiffs would – at some undefined time or in some undefined manner – like to do, and they must show that their chill is based on an "actual and *well-founded fear* that the law will be enforced against them."  *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (emphasis added); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm[.]").  In other words, Plaintiffs' "chill" must be objectively reasonable in light of the plain language of the statute.  *N.H. Right to Life v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996).  Moreover, Plaintiffs must establish standing as to each provision of the Act they challenge.  *Nat'l Org. For Marriage*, 649 F.3d at 47-48.  But this, Plaintiffs have not done.

A.      **Section (a)(2)(A)**

Plaintiffs Blum, Shapiro, Lehr, and Gazzola all claim that they have refrained from a host of activity for fear of prosecution under Section (a)(2)(A) of the AETA:  Plaintiff Blum and Plaintiff Shapiro allege that they have foregone investigating the treatment of animals at certain farms and then speaking publicly about it, Compl. ¶¶ 87-88, 92, 106-07, 111; Plaintiff Lehr alleges that she has refrained from organizing and attending fur protests, *id*. ¶¶ 126-28, 130; and Plaintiff Gazzola censored herself from adding one, non-inciteful line to an internet post, *id*. ¶¶ 146-47.  Each allegedly fears that if such activities would lead to a change in public opinion and a consequent loss in profits for an animal enterprise, he or she could be found guilty of violating Section (a)(2)(A).  For the following reasons, Plaintiffs' alleged fears are not objectively reasonable.

*First*, all of Plaintiffs' foregone activity is exempt from the statute's reach by operation of Section (e), the Act's "rules of construction." *See* 18 U.S.C. § 43(e). Together, these rules provide that the AETA shall not be construed to "prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment," *id*. § 43(e)(1), or to "create new remedies for interference with activities protected by the free speech . . . clause[] of the First Amendment . . . regardless of the view expressed," *id*. § 43(e)(2). Plaintiffs claim that the rules do not assuage their fears of prosecution, because the rules are "meaningless," "redundant," and ambiguous. Pl. Opp. at 4-5. But with these arguments, Plaintiffs, at bottom, ask the Court to read the rules of construction out of the statute – a proposition the Court must reject.

As a starting point, this court should interpret the statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (internal quotations and citation omitted); *see also King v. St. Vincent's Hospital*, 502 U.S. 215, 221 (1991) (citation omitted) (a "statute is to be read as a whole, since the meaning of statutory language . . . depends on context"). A reading of the AETA as a whole reveals that Section (e) does not *contradict* Section (a); rather, it *informs* and confirms the limits of Section (a). Section (a) sets forth the elements of the substantive offense, providing that one cannot travel or use interstate commerce and intentionally damage or cause the loss of property used by an animal enterprise with the purpose of damaging or interfering with the operations of the enterprise. 18 U.S.C. § 43(a)(1)-(2)(A). Section (e) does not provide a conflicting element of the offense, but instead, states how Section (a) is to be "construed," *id*. § 43(e) – to cover conduct such as vandalism, theft, and arson, but not activities such as writing a letter to the editor on a particular animal enterprise, Compl. ¶ 93, lawfully entering a farm to

3

investigate and report on conditions, *id*. ¶¶ 95, 113, or the organizing of animal rights campaigns "within the bounds of what is lawful and protected by the First Amendment," *id*. ¶ 142.

In addition, the rules of construction should not be disregarded as redundant of the First Amendment or vague as to their application. *See* Pl. Opp. at 4. The rules of construction are a textual expression of Congress' intent in drafting the statute. *See CISPES v. FBI*, 770 F.2d 468, 474 (5th Cir. 1985) (holding that a nearly identical provision "is a valuable indication of Congress' concern for the preservation of First Amendment rights *in the specific context of the statute in question*") (emphasis added). Congress passed the AETA to provide prosecutors with another tool to combat "violent acts" such as "arson, pouring acid on cars, mailing razor blades, and defacing victims' homes." 152 CONG. REC. H8590, H8591 (daily ed. Nov. 12, 2006) (House consideration and passage of S. 3880). Yet, at the same time, Congress sought to protect the "rights of those engaged in first amendment freedoms of expression regarding [animal] enterprises." *Id*. To accomplish this, Congress added a "manager's amendment" (now the rules of construction) to the Act, ensuring protection for precisely the type of activity in which Plaintiffs desire to engage. *See Animal Enterprise Terrorism Act: Hearing Before Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. On the Judiciary*, 109th Cong. 34. And the language Congress used in Section (e) does not leave Plaintiffs or the "putative criminal defendant" in the dark as to what is and what is not proscribed. *See* Pl. Opp. at 4. In fact, the rules speak directly to the activity Plaintiffs propose. For example, Plaintiff Lehr's standing is based entirely on her claims that she has foregone organizing and attending non-violent, public protests in front of fur stores, *see* Compl. ¶¶ 117, 120, 121, 124; but this activity is *explicitly* exempted from the AETA's reach. 18 U.S.C. § 43(e)(1) (providing that the statute does not cover "peaceful picketing or other peaceful demonstration"). While Plaintiffs contend that

4

Section 43(e)(1) "does not by its terms even cover speech such as the dissemination of information," which is "well within the core of First Amendment protections," Pl. Opp. at 5, they need look no further than Section 43(e)(2) for such protection. 18 U.S.C. § 43(e)(2) (providing that the Act shall not be construed to interfere with activities protected as free speech). Overall, the rules of construction are "no[] more vague than the First Amendment itself." *Hutchins v. District of Columbia*, 188 F.3d 531, 546 (D.C. Cir. 1999). Their existence in the statute "fortifies, rather than weakens, First Amendment values," *Schleifer v. City of Charlottesville*, 159 F.3d 843, 853 (4th Cir. 1998), and there is no basis for reading them out of the Act, especially since they apply directly to the activity Plaintiffs claim to forego.

*Second*, and aside from the rules of construction, Plaintiffs' fears of prosecution under Section (a)(2)(A) are not well-founded because, as explained in Defendant's Motion at 18-20 and *infra* at 12-14, one cannot be prosecuted under the AETA for swaying public opinion and, in turn, causing purely a loss of profits for an animal enterprise. Section (a)(2)(A) calls for physical, tangible damage, as is indicated by Congress' use of the term "economic damage" only in Section (b), the penalty provision. Moreover, even if Section (a)(2)(A) could be read to include economic damage, such as loss of profits, the loss of profits Plaintiffs intend – that from their dissemination of information on the treatment of animals – is exempt from the statute's reach by Section (d)(3)(B). *See* 18 U.S.C. § 43(d)(3)(B) ("economic damage" does not include "any lawful economic disruption . . . that results from lawful public . . . reaction to the disclosure of information about an animal enterprise"); *see also, e.g.*, Compl. ¶¶ 87, 111.

*Third*, Plaintiffs' own allegations undermine their assertions of a reasonable chill, as they demonstrate that others are engaging in the exact activity they claim to forego – free from prosecution under the AETA. For example, Plaintiff Blum claims she would like to "advise and

5

work with the [Minneapolis Animal Rights Collective] to raise public awareness of foie gras," Compl. ¶ 86, but she does not "due to her reasonable understanding of the plain language of the AETA." Pl. Opp. at 7. But one must ask: how is Plaintiff's fear of prosecution reasonable when those participating in the collective are not being deterred or prosecuted under the AETA? Plaintiff Shapiro alleges that he wants to engage in "public education and outreach efforts," but he is chilled from such activity. Compl. ¶ 107. Yet, at the same time, Plaintiff Shapiro is actively engaging in "leafleting, public speaking and campaign work." *Id.* ¶ 111. Plaintiffs do not explain how, in their view, the AETA proscribes public education and outreach efforts if the law does not cover public speaking and campaign work about animal rights (which could lead to a loss of profits for an animal enterprise).[1] Finally, Plaintiff Lehr need look no further than to the work of her co-Plaintiff, Plaintiff Johnson, to see that one can organize and attend protests and not be charged with violating the AETA. *See id.* ¶¶ 158, 160-61 (Plaintiff Johnson alleges he "organized a lawful Chicago demonstration" in 2007 and has attended other protests in New York City since 2011).

*Finally*, despite the statute's near-six year existence, Plaintiffs cannot point to a single prosecution under the AETA for nonviolent issue advocacy that caused third parties to change their purchasing habits that, in turn, caused a loss of profits for an animal enterprise – precisely what Plaintiffs claim they fear under the Act. *See* Pl. Opp. at 7-11. Instead, the handful of prosecutions brought under the AETA to date have been for activity such as releasing hundreds

---

[1] Contrary to Plaintiffs' assertion, Pl. Opp. at 8 n.4, this is not an attack on Plaintiff Shapiro's credibility, but instead on the definiteness of his allegations and the reasonableness of his fear. Plaintiff also cannot demonstrate a well-founded chill based on an exhibit identified as a FBI memo. *Id.* at 9. The memo describes "illegal entry" as a violation of the AETA, but Plaintiff Shapiro expressly states that he does not desire to enter any animal enterprise without permission. *Id.* at 8. Consequently, the memo should be of no consequence to him.

6

of animals from farms or laboratories, defacing property with spray paint, and other vandalism. Compl. ¶¶ 63-66.  Plaintiffs have expressed no interest in this type of activity.  *Id*. ¶¶ 125, 142.

Thus, for all of these reasons, Plaintiffs' alleged fears of prosecution under Section (a)(2)(A) are not "objectively reasonable," and Plaintiffs' claims as to this provision must be dismissed.  *See R.I. Ass'n of Realtors v. Whitehouse*, 199 F.3d 26, 31 (1st Cir. 1999).

## B.      Section (a)(2)(B)

Plaintiff Gazzola is the only Plaintiff to allege a chill based on operation of Section (a)(2)(B).  *See* Compl. ¶ 143; *see also id*. ¶ 97 (Plaintiff Blum, alleging fear of prosecution under only (a)(2)(A)); *id*. ¶ 114 (Plaintiff Shapiro, same); *id*. ¶ 128 (Plaintiff Lehr, same); *infra* at 8-9 (Plaintiff Johnson).  But her allegations of a chill thereunder do not suffice.  Plaintiff claims she is chilled from public speaking, protest chants, theoretical advocacy of illegal action, adding a line to an internet post, and lawful protests in front of an individual's home that are within the limits of municipal and state ordinances and that do not include "mak[ing] threatening statements."  Compl. ¶¶ 142-43, 147-48.  But she does not allege any intent to place another in reasonable fear of death or serious bodily injury, *see* Compl. ¶¶ 142-148, and her desired actions, as alleged in the Complaint, do not amount to a "course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation" against a particular person.  18 U.S.C. § 43(a)(2)(B).  Rather, Plaintiff disavows such conduct.  *See* Compl. ¶ 142.  In addition, like the foregone activity of the other Plaintiffs, Plaintiff Gazzola's desired advocacy and protesting is exempt from the statute's reach by Section (e), as by her own allegations it is "within the bounds of what is lawful and protected by the First Amendment."  *Id*.  Because Plaintiff Gazzola has not sufficiently alleged a reasonable fear of prosecution under (a)(2)(B), the

7

Court must dismiss Plaintiffs' vagueness and content/viewpoint discrimination claims as to that

provision and deny Plaintiffs' request to strike down the law in its entirety.  *See id.* ¶¶ 167, 169,

Prayer for Relief #2.

### C.     Plaintiff Johnson

One Plaintiff remains to be discussed.  Plaintiffs concede that Plaintiff Johnson does not

have a fear of prosecution under the AETA for his animal rights activism.  *See* Pl. Opp. at 11.

Instead, Plaintiffs argue he is injured by being "impeded [in] his work due to the far-reaching

chill it has cast on others in his community."  *Id.*[2]  But this kind of "speculative chain of

causation" is not sufficient under the traceability prong of Article III standing.  *Clinton v. City of

New York*, 524 U.S. 417, 436 n.23 (1998); *see also Katz v. Pershing, LLC*, 672 F.3d 64, 71-72

(1st Cir. 2012) ("Because the opposing party must be the source of the harm, causation is absent

if the injury stems from the independent action of a third party.").  While Plaintiff need not

include "detailed factual allegations" in his complaint, he must, at least "include 'factual content

that allows the court to draw the reasonable inference that the defendant is liable for the [injury]

alleged.'"  *Katz*, 672 F.3d at 73 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir.

2011)).  Plaintiff Johnson's allegations are "purely speculative" and do not allow for a reasonable

inference that the lack of any community of activists for Plaintiff Johnson in his new situs of

New York City can be traced to the enactment of the AETA as opposed to other forces or

---

[2] Contrary to Plaintiffs' assertion, Pl. Opp. at 11, *Mangual v. Roger-Sabat*, 317 F.3d 45 (1st Cir. 2003), does not stand for the proposition that an individual can show standing based on alleged indirect affect on him of other people being chilled.  In *Mangual*, the First Circuit found that the plaintiff had standing because he "faced and continues to face a real threat of prosecution," and because he was chilled in his own "investigative reporting due to the possibility of prosecution."  *Id.* at 48.  While the Court noted that there is a "danger his sources will silence themselves," this, independently, was not a basis for standing.  *Id.*

circumstances or decisions by third parties not before the Court.  *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42-43 (1976).

\* \* \*

In summary, although the standard for standing based on allegations of a First Amendment chill may be "forgiving," the law is absolute that a plaintiff must still establish the reasonableness of his or her chill based on the plain meaning of the statute.  *N.H. Right to Life*, 99 F.3d at 14; *see also Sullivan v. City of Augusta*, 511 F.3d 16, 27 (1st Cir. 2007) (plaintiffs had standing to challenge ordinance because it covered "precisely the events the plaintiffs intended"); *R.I. Ass'n of Realtors*, 199 F.3d at 31 (finding standing because "there is simply no plausible way to read the statutory text so that it exonerates the Association's proposed solicitation"); *Berner v. Delahanty*, 129 F.3d 20, 23-25 (1st Cir. 1997) (attorney had standing to challenge judicial ban on political buttons in the courtroom where he had been required to remove a button and said that he would seek to wear a button in the courtroom again), *cert. denied*, 523 U.S. 1023 (1998); *N.H. Right To Life Comm.*, 99 F.3d 8 (organization had standing to challenge campaign finance statute where it intended to make campaign expenditures banned by the statute and there was no evidence contradicting credible threat of prosecution).  Because Plaintiffs' allegations do not demonstrate a well-founded fear of prosecution or any other basis for Article III standing, their claims must be dismissed.

## II.     PLAINTIFFS' CLAIMS ARE NOT RIPE.

The ripeness doctrine's "basic function is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967).  Relying on *Sullivan v. City of Augusta*, 511 F.3d 16 (1st

Cir. 2007), Plaintiffs contend that the ripeness requirements are relaxed in the First Amendment

context, and the Court should dispense with them here.  *See* Pl. Opp. at 11.  But even under

*Sullivan*, a plaintiff must still show, at a minimum, "reasonable predictability of enforcement or

threats of enforcement" to establish a claim's fitness.  511 F.3d at 27, 31 (finding ripeness after a

finding that the challenged parade ordinance "regulates in haec verba the very type of conduct in

which plaintiffs intended to engage").  Plaintiffs have shown neither.  First, because the AETA,

by its plain terms, does not apply to Plaintiffs' proposed activities, there is no real possibility of

prosecution.  *See id.; see also supra* at 2-9.  Second, despite engaging in some synonymous

speech and advocacy, Plaintiffs have received no threats of prosecution under the AETA to date.

*See, e.g.*, Compl.¶ 111 (Plaintiff Shapiro, currently "leafleting, public speaking, and [doing]

campaign work"); *id.* ¶¶ 146-47 (Plaintiff Gazzola, posting regarding an animal enterprise on

Internet); *id.* ¶¶ 158-61 (Plaintiff Johnson, organizing and attending protests, "showing

screenings of animal rights related films").  Consequently, any disagreement Plaintiffs have with

the AETA is merely ideological and not one appropriate for adjudication at this time.

## III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.    The AETA is Not Unconstitutionally Overbroad.

In challenging the AETA on overbreadth grounds, Plaintiffs do not contest the standard

that applies.  *See* Pl. Opp. at 12-13.  Plaintiffs must show that the "statute's overbreadth [is]

substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate

sweep."  *United States v. Williams*, 553 U.S. 285, 292 (2008).  This heavy burden is

commensurate with the fact that invalidation on overbreadth grounds is an extreme remedy, to be

used as a last resort.  *See Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).  In fact, "[r]arely, if

ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Id.* And Plaintiffs' challenge shares that fate, for the AETA does not "criminalize a broad range of protected speech[,]" Pl. Opp. at 13. To the contrary: the AETA criminalizes conduct and only a small fraction of speech – that which is so inciteful or threatening that it receives no First Amendment protection and can place another in reasonable fear of his or her safety. 18 U.S.C. §§ 43(a), (e); *see also Virginia v. Black*, 538 U.S. 343, 359 (2003) (no First Amendment protection for "true threats"); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (speech inciting imminent lawless action may be restricted). This is evident by, *inter alia*, the requirement that a person engage in a "course of conduct" to commit the offense in Section (a)(2)(B) and the command in Section (e) that Section (a) not be read to cover speech protected by the First Amendment. 18 U.S.C. §§ 43(a), (e).

Plaintiffs nonetheless contend that Section (a)(2)(A) covers a substantial amount of First Amendment activity, for under its plain terms, one can be convicted for "publiciz[ing] the horrific treatment of animals at certain businesses and organiz[ing] community campaigns in opposition to such treatment" if that causes an animal enterprise to: (1) lose profits, (2) hire an extra security guard, or (3) cause third parties to engage in violent acts. Pl. Opp. at 14. Not only do Plaintiffs ignore Section (a)(2)(A)'s legitimate reach in proscribing a host of violent, destructive behavior, such as arson, theft, and vandalism, but they are also wrong in arguing that it has this impermissible application.

Again, as an initial matter, Plaintiffs' overbreadth argument depends entirely on an extraction of Section (e)'s rules of construction from the statute. But, as shown *supra* at 3-5,

there is no basis for disregarding them.  *Cf. United States v. Bird*, 124 F.3d 667, 683 (5th Cir. 1997) (holding that the Freedom of Access to Clinic Entrances Act is not unconstitutionally overbroad, in part, because of its "rules of construction," which are identical to the AETA's). Section (e)'s rules of construction would exempt from prosecution the very publicizing and organizing Plaintiffs propose, regardless of the lawful economic effect it had on an animal enterprise's bottom line.  *See* 18 U.S.C. § 43(e).

Moreover, as to Plaintiffs' concern of lost profits or additional costs in hiring a security guard:  As explained in Defendant's opening brief, *see* Dkt. # 12 at 18-20, the words "damages," "causes the loss," and "real or personal property" must be read in light of surrounding words of the statute as well as Congress' intent in enacting it.  Congress sought to criminalize violent and destructive acts that cause tangible harm to the property of an animal enterprise – such as the loss of "animals or records."  18 U.S.C. § 43(a)(2)(A).  Congress recognized, however, that destructive acts, such as vandalism, could result in not only tangible harm, but also serious economic damage to an animal enterprise.  Thus, in crafting the penalties for a violation of Section (a), Congress provided that one can be penalized both for the cost of the initial vandalism (*i.e.* broken laboratory equipment), but also for additional resulting harm, such as "replacement costs of lost of damaged property or records, the costs of repeating an interrupted or invalidated experiment, the loss of profits, or increased costs, including losses and increased costs resulting from threats, acts of vandalism, property damage, trespass, harassment, or intimidation[.]"  *Id*. § 43(d)(3)(A).  Yet, because "economic damage" is only considered when one's "*offense results in* economic damage," *id*. § 43(b)(1)(B) (emphasis added), Section (a), which defines the offense, must be understood as proscribing something other than purely economic damage.  *See United*

12

*States v. Buddenberg*, 2009 WL 3485937, *6 (N.D. Cal. Oct. 28, 2009) (noting that "the language of the statute is important: penalty increases occur when 'the *offense results* in economic damage'" but the "'offense' refers to the intentional acts specified in § 43(a)(2)(A) and 43(a)(2)(B)") (emphasis in original).

Plaintiffs argue that the history of the AETA "confirms Plaintiffs' interpretation" that the statute proscribes speech that causes a loss of profits for an animal enterprise.  Pl. Opp. at 18.  But this cannot be so in light of two provisions Congress added to the Act in 2006 to protect speech and other activity designed to sway public opinion.  First, Congress added the "rules of construction" that make clear the statute does not prohibit any expressive conduct or speech protected by the First Amendment.  *Compare* 18 U.S.C. § 43 (2002) *with* 18 U.S.C. § 43(e)(1)-(2) (2006).  Second, Congress add a qualifier to the definition of "economic damage," to ensure that one cannot be punished for "any lawful economic disruption (including a lawful boycott) that results from lawful public governmental, or business reaction to the disclosure of information about an animal enterprise." *Id*. § 43(d)(3)(B) (2006).  Plaintiffs contend that this new proviso on the definition of "economic damage" only confirms that Congress anticipated that "disclosure of information" could trigger liability under the AETA.  Pl. Opp. at 19.  But again, Plaintiffs conflate the offense provision with the penalty provision, despite the difference in language between the two.  Congress' caveat on the definition of "economic damage" ensures that those who engage in protests that cause physical damage to the property of an animal enterprise are not punished for any economic losses sustained by the enterprise from any public backlash that may occur as a result of protest.[3]  In other words, the provision helps ensure that

---

[3] Plaintiffs claim Section (d)(3)(B) does nothing to protect advocacy or speech, as it pertains to the "disclosure of information."  Pl. Opp. at 22.  But Plaintiffs' overly narrow reading

individuals are punished for their conduct, but not for any accompanying message conveyed. Furthermore, Plaintiffs still cannot explain how one's conviction can turn on lost profits or increased costs from lawful public reaction when one cannot, under Section (d)(3)(B), be punished for such damage.

Plaintiffs' overbreadth arguments fare no better with their second hypothetical: that Plaintiffs could be prosecuted for engaging in non-violent speech and advocacy if third parties, influenced by Plaintiffs' words, then committed violent, damaging, unlawful actions against an animal enterprise. *See* Pl. Opp. at 22. In fact, Plaintiffs' argument here "demonstrate[s] nothing so forcefully as the tendency of [the] overbreadth doctrine to summon forth an endless stream of fanciful hypotheticals[.]" *Williams*, 553 U.S. at 301. Nonetheless, Plaintiffs' hypothetical is addressed by Section (e), which provides that Section (a)(2)(A) cannot be read to proscribe Plaintiffs' proposed, non-violent speech. 18 U.S.C. § 43(e)(1)-(2). Furthermore, it simply cannot be said that this "hypothetical[], without further facts, would enable a reasonable juror to find, beyond a reasonable doubt," *Williams*, 553 U.S. at 301, that Plaintiffs "intentionally damage[d] or cause[d] the loss of real or personal property," 18 U.S.C. § 43(a)(2)(A). Rather, a reasonable juror would likely find (assuming all other elements are met) that *the third party*, having committed the violent act that caused the damage, is guilty of the offense.

The bottom line: should any of Plaintiffs' far-fetched hypotheticals on the fringes of the statute's plain text call into question the statute's reach, the proper remedy is not facial invalidation, but rather, redress through an as-applied challenge. *See Virginia v. Hicks*, 539 U.S.

---

of the provision to protect only the dissemination of pamphlets should be rejected. The speech and advocacy Plaintiffs envision clearly falls under the phrase "disclosure of information," especially since, by Plaintiffs' own allegations, they fear being prosecuted for the reaction of the public to the information conveyed by their speech. *Id*. at 7-11.

113, 124 (2003).  Here, Plaintiffs clearly cannot show that any possible impermissible

applications dwarf the statute's "plainly legitimate sweep," *Williams*, 553 U.S. at 292, and that

they are entitled to the exceptional remedy they seek.

      **B.**      **The AETA Is Not Impermissibly Vague.**

      Once the Court has determined that the AETA does not reach a substantial amount of

constitutionally protected speech or conduct, Plaintiffs' vagueness challenge is easily dispensed

with, as Plaintiffs cannot show that the law is vague in all of its applications, or even in the vast

majority of them.  *See Hill v. Colorado*, 530 U.S. 703, 733 (2000).  Certainly, Plaintiffs have not

shown that the statute is unclear as to their desired speech, for if Section (e) is given effect – as it

should be – there appears to be no dispute that it would cover all of Plaintiffs' proposed speech

and conduct.  For these reasons alone, Plaintiffs vagueness challenge cannot succeed.  *See*

*Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2721 (2010).

      Nonetheless, Plaintiffs contend that certain words in the statute leave them and others

unclear as to what is proscribed.  First, Plaintiffs argue that multiple meanings of "interfering"

make it impossible for individuals to guide their own behavior.  Yet, Plaintiffs themselves

provide definitions for the term.  *See* Pl. Opp. at 25.  And the fact that a term can have more than

one definition does not render the term vague.  "Ambiguity is a creature not of definitional

possibilities but of statutory context."  *Brown v. Gardner*, 513 U.S. 115, 118 (1994).  Here, the

statute "prohibits conduct with the intent of 'damaging or interfering with the operations of an

animal enterprise.'"  *Buddenberg*, 2009 WL 3485937, *9 (quoting 18 U.S.C. § 43(a)(1)).

Section (a)(1) provides the intent requirement, not the act requirement.  It serves to limit the

statute to proscribing only a class of intentional acts encompassed by Sections (a)(2)(A) and (B):

those undertaken with the purpose of damaging or interfering with the operations of an animal enterprise. *See Skilling v. United States*, 130 S.Ct. 2896, 2933 (2010) ("the statute's mens rea requirement further blunts any notice concern"). The cases cited by Plaintiffs in which "interfere" has been held to be impermissibly vague are inapposite, for in those cases, "interfere" was the action for which one could be convicted. *See* Pl. Opp. at 26; *see also, e.g., Dormal v. Satti*, 862 F.2d 432 (2d Cir. 1988). Plaintiffs recognize that courts have upheld the term when it is limited within the statute, and that is precisely the case here. *See* Pl. Opp. at 26; *Buddenberg*, 2009 WL 3485937, *8.

Next, Plaintiffs continue to argue the vagueness of the term "animal enterprise," but there is no basis for Plaintiffs' challenge to this term, for this "complaint[] of vagueness [is not] exemplified by [their] own desired conduct," Pl. Opp. at 24. Indeed, not one of the Plaintiffs alleges that he or she fears prosecution for actions against an entity because he or she does not know if the proposed actions would be against an animal enterprise. Rather, Plaintiffs allege a desire to engage in activity *against specific animal enterprises*. *See, e.g.*, Compl. ¶ 93 (Plaintiff Blum allegedly fears mentioning Hudson Valley Foie Gras in a letter to the editor); *id*. ¶ 128 (Plaintiff Lehr alleges that she refrains from protesting in front of fur stores); *id*. ¶¶ 146-47 (Plaintiff Gazzaola, allegedly fears prosecution for encouraging others to continue her work against Huntington Life Sciences). Consequently, Plaintiffs' vagueness argument as to this term is an "abstract" one, "beside the point here." *Humanitarian Law Project*, 130 S.Ct. at 2721. Moreover, the term "animal enterprise" is defined in the statute. *See* 18 U.S.C. § 43(d)(1). The fact that the definition covers a large number of establishments is of no consequence to a vagueness challenge. What matters is that the term is clear.

As for Section (a)(2)(A), Plaintiffs attack the terms "damage," "cause the loss," and "economic damage" as so vague that one could reasonably believe that those engaged in a lawful peaceful protest on a public sidewalk across the street from an animal enterprise could be convicted under the Act if the enterprise decides to hire a security guard.  Pl. Opp. at 28.  According to Plaintiffs, because "damage" and "cause the loss" have no defined meaning, and because Section (d)(3)(B) is not clear, "a reasonable person will have no idea how seriously she will be punished for violations of the AETA."  *Id*.  As an initial matter, there can be no prosecution for one's involvement with a "lawful peaceful protest" because the Act says as much.  *See* 18 U.S.C. § 43(e)(1).  Thus, a reasonable person would not worry about the degree of her punishment, as she is assured under Section (e)(1) that she will not be punished at all for protesting.  Second, it is more than a stretch to say that peaceful protestors "intentionally damage[d] or cause[d] the loss of any real or personal property . . . used by an animal enterprise" when the enterprise decided on its own to hire a security guard, or two, or three, or four.  *Id*. § 43(a)(2)(A).  To the extent, however, that a protest turned violent and a protestor engaged in acts of vandalism, property damage, trespass, harassment or intimidation, and a company consequently expended funds to increase security, that protestor may find his or her penalty increased due to such expenses.  *Id*. § 43(d)(3)(A).  But that is not the scenario Plaintiffs propose.

Plaintiffs' vagueness attack on Section (a)(2)(B) centers on the term "course of conduct" and the lack of any time limitation in the term's definition.  Pl. Opp. at 29.  Yet, none of the Plaintiffs allege a foregone desire to engage in "a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation[.]" 18 U.S.C. § 43(a)(2)(B).  Consequently, Plaintiffs need not fear the term's application, and any discussion

17

of this term's vagueness is only as to hypotheticals.  Even so, "course of conduct" is not vague.

In fact, Congress defined "course of conduct" as "a pattern of conduct composed of 2 or more

acts, evidencing a continuity of purpose[.]"  *Id*. § 43(d)(2).  That Congress did not include time

constraints does not make the term vague, for Congress included an alternate limitation – that the

violent, destructive acts must have been done with a "continuity of purpose" to place a targeted

individual in fear of death or bodily injury.  *Id*.  As *amici* point out, the term, with the identical

definition, was used by Congress in the interstate stalking statute, Dkt. # 27 at 15-16, and only

this month, the Fourth Circuit upheld the term and its definition against a vagueness attack:

> the statute avoids sweeping up innocent acts by requiring that the course of
> conduct 'evidenc[e] a continuity of purpose' to cause the proscribed harm.  It of
> course remains open to a defendant to argue that the charged acts were innocent or
> mistaken, and therefore do not meet the clear textual requirement that the course
> of conduct 'evidenc[e] a continuity of purpose,' but that is an argument that
> sounds in sufficiency of the evidence, not vagueness.

*United States v. Shrader*, --- F.3d ----, 2012 WL 1111654, *10 (4th Cir. April 4, 2012).[4]  So it is

here.  Although Congress provided no outer limits of time, the government's case of proving a

"continuity of purpose" will, naturally, become more difficult as time passes; and any criminal

defendant is free to argue the sufficiency of the government's evidence as to the defendant's

"continuity of purpose" over a period of time.  *See id.*

---

[4] Plaintiffs dismiss the district court's holding in *United States v. Shrader* on the grounds that the defendant in the case "does not appear to have advanced Plaintiffs' temporally based theory of vagueness[.]"  Pl. Opp. at 30.  But the defendant did, at one time, argue that the statute's use of "course of conduct" lacked any "time constraints" or "time limits."  *United States v. Shrader*, Slip Copy, 2010 WL 2218755, *2 (S.D. W.Va. June 2, 2010).  While it is true that the district court and Court of Appeals did not discuss this argument, their rationale dispenses with Plaintiffs' alleged fear that the definition encompasses "disparate acts" or "group activity." *See* Pl. Opp. at 29.  By requiring the government to prove beyond a reasonable doubt that *an individual defendant* had a continuity of purpose in engaging in "a course of conduct" to place a specific person in reasonable fear of death or bodily injury, disparate acts or ones not intentionally undertaken by the defendant will not be sufficient for a conviction under the statute.

Finally, Plaintiffs continue to advance their claim that the conspiracy provision, Section(a)(2)(C), is unconstitutionally vague, for although judges or lawyers may recognize that provision (C) refers to conspiring or attempting to do either (A) or (B), lay people may read the Act to criminalize nothing more than conspiring or attempting to use interstate commerce for the purpose of damaging or interfering with the operations of an animal enterprise.  Pl. Opp. at 31. This argument, however, is  "premised upon a technical, nonsensical reading of the AETA," *Buddenberg*, 2009 WL 3485937, *12, and ignores the statutory language "and" at the end of Section (a)(1), which signifies that something more than having the "purpose of damaging or interfering with the operations of an animal enterprise" is required.  18 U.S.C. § 43(a)(1). Contrary to Plaintiffs' contention, one need not be a lawyer to read the statute in its most plain and straightforward manner and discern that Section (a)(2)(C) is the inchoate offense of either of the statute's two proscribed acts:  intentionally damaging or causing the loss of real or personal property or intentionally placing a personal in reasonable fear of bodily injury.  *Id*.

### C.      The AETA is Content and Viewpoint Neutral.

Plaintiffs contend that both Section (a)(2)(A) and (a)(2)(B) are constitutionally infirm because they impermissibly discriminate based on the content of speech or the viewpoint expressed.  But, under the plain text of the statute, Plaintiffs' attack fails as to both provisions.

As for the former, Plaintiffs specifically contend that the provision prohibits speech because of its intended impact – "if the speech has the purpose and effect of causing a business to lose profits, it is criminalized."  *Id*.  And, according to Plaintiffs, because only certain speech and conduct directed at an animal enterprise will have such an effect, the government has interfered "with the marketplace of ideas and opinions."  Pl. Opp. at 35 (citation omitted).  But a restriction

is content based only if it was adopted because of a disagreement with the message conveyed. *Hill*, 530 U.S. at 719-20.  Section (a)(2)(A)'s restriction is imposed based on whether one intentionally damages or causes a loss to the property of an animal enterprise, not on the content of one's speech.  In fact, the Act exempts protected speech from its reach, "regardless of the point of view expressed."  18 U.S.C. § 43(e)(2); *cf. United States v. Fullmer*, 584 F.3d 132, 154 (3d Cir. 2009) (recognizing that the AEPA does not reach speech on "issue[s] of political, moral, and ethical importance in today's society").  Thus, Congress did not enact the AETA because of a disagreement with any message conveyed, but rather because of a disagreement with means employed, regardless of any message.

Plaintiffs citation to *Boos v. Barry*, 485 U.S. 312 (1988), and proffered hypothetical are not persuasive.  First, the restriction at issue in *Boos*, unlike the AETA, *did* draw lines based on the content of messages conveyed.  *Id*. at 315.  "Whether individuals may picket in front of a foreign embassy depends entirely upon whether their picket signs are critical of the foreign government or not."  *Id*. at 319.  Thus, under the restriction in *Boo*s, if one stood in front of an embassy with a sign that said, "Stop engaging in civil rights abuses," one could be charged under the prohibition.  If, however, one stood in front of that same embassy with a sign that said, "Take the gold in the winter Olympics!" that same person, with the same size sign, could not be convicted.  *See id.*  The same cannot be said of the AETA.  If one defaces the side of an animal enterprise's building with graffiti that says, "Stop polluting our air now!" the person stands as much chance of being convicted under the AETA as one that sprays graffiti of the same size on the same building that says "Stop research on rabbits now!"  *See* 18 U.S.C. § 43(a).  Thus, the provision is not justified by reference to the content of speech, as either person could be said to

20

have the "purpose of damaging or interfering with the operations of an animal enterprise" and to have "intentionally damage[d] . . . real or personal property" used by the enterprise.  18 U.S.C. § 43(a)(1)-(2)(a).

Plaintiffs offer their own hypothetical:  two sets of advocates protest outside a food convention – those in favor of foie gras and those opposed to foie gras.  Pl. Opp. at 34. According to Plaintiffs, only the latter could be prosecuted as only the message of those in the anti-foie gras group could discourage potential investors and cause a loss of profits.  *Id*. Plaintiffs are wrong on at least two counts: (1) neither group would be prosecuted under the AETA, as Section (e)(1) explicitly provides that the Act does not cover peaceful demonstrations; and (2) because the AETA does not criminalize lawful public reaction to the message of anti-foie gras groups, Plaintiffs' hypothetical only illustrates that the AETA is not concerned with the "emotive impact of speech on its audience," *Boos*, 485 U.S. at 321, but instead, concerned with actual damage caused by the violent, destructive acts of any group, with or without a message.

As for Section (a)(2)(B), Plaintiffs argue that even if this provision only prohibits unprotected speech, such as "true threats," it is unconstitutional, as it only targets a class of that unprotected speech.  Pl. Opp. at 35.  In support, Plaintiffs cite *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992), wherein the Supreme Court struck down a municipal ordinance prohibiting the use of "fighting words that insult, or provoke violence, on the basis of race, color, creed, religion or gender," because the ordinance only outlawed a class of fighting words deemed particularly offensive because of their message.  505 U.S. 377, 391 (1992) (internal quotations omitted).  The ordinance was unconstitutional, the Court held, because it "imposed special prohibitions on those speakers who express views on disfavored subjects."  *Id*.  But just as this case is not *Boos*, this

21

case is not *R.A.V.*  As Plaintiffs are forced to admit, *see* Pl. Opp. at 38 n.16, the AETA does not

impose criminal sanctions based on the subject of one's threats, for one threatening the safety of

a chief executive of an animal enterprise because of the enterprise's human resources policies is

equally open to prosecution under the Act.  Section (a)(2)(B) proscribes a "course of conduct" of

true threats *because of* those threats' intimidating, harmful nature.

Nor does the AETA take sides in the animal rights debate.  *See* Pl. Opp. at 38 n.16.

"Indeed, if an animal enterprise made a controversial concession to animal rights activists, and

protestors opposing that decision intentionally placed a person in reasonable fear of serious

bodily injury for the purpose of damaging the animal enterprise, that conduct too would violate

the AETA."  *Buddenberg*, 2009 WL 3485937, *12.  And, it matters not that "certain speakers are

disproportionately burdened," *McGuire v. Reilly*, 260 F.3d 36, 44 (1st Cir. 2001), because "'[a]

regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it

has an incidental effect on some speakers or messages but not others,'" *Hastings College of the

Law v. Martinez*, 130 S. Ct. 2971, 2994 (2010) (quoting *Ward v. Rock Against Racism*, 491 U.S.

781, 791 (1989), and rejecting the argument that a regulation is unconstitutional because "'it

systematically and predictably burdens most heavily those groups whose viewpoints are out of

favor with the campus mainstream'").

While Plaintiffs argue that the government has no legitimate interest in "promoting or

protecting the profit margins of foie gras farms," Pl. Opp. at 38, this summation of the

government's interest in enacting the AETA is unduly narrow and incomplete.  The AETA does

not support the profit making of a handful of companies, or pick out particular companies or

viewpoints for protection or disfavor.  *See Buddenberg*, 2009 WL 3485937, *12.  Indeed,

22

Plaintiffs' own reading of the term "animal enterprise" to encompass "almost any business that buys or sells animal products," undermines any argument that it does.  *See* Comp. ¶ 5; Pl. Opp. at 27.  Congress passed the AETA to respond to an increase in violence against animal enterprises and those associated with them.  *See, e.g.,* 152 CONG. REC. H8590, H8591-92.  Because Congress crafted a limited statute to address destructive, violent, threatening conduct, regardless of whether the conduct is accompanied by a message or not, and regardless of what that message might be, Congress' Act should be upheld.

<u>CONCLUSION</u>

For all of the aforementioned reasons, Plaintiffs' Complaint must be dismissed.

Dated: April 27, 2012                              Respectfully submitted,

                                                   STUART F. DELERY
                                                   Acting Assistant Attorney General

                                                   JOHN R. GRIFFITHS
                                                   Assistant Director
                                                   Federal Programs Branch

                                                    */s/ Deanna L. Durrett*
                                                   DEANNA L. DURRETT (NY Bar)
                                                   United States Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   Tel: (212) 264-9232
                                                   Fax: (212) 264-1916
                                                   <u>Mailing Address</u>:
                                                   26 Federal Plaza, Room 346
                                                   New York, NY 10278
                                                   *Counsel for Defendant*

<u>Certificate of Service</u>
I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 27, 2012.

                                                    */s/ Deanna L. Durrett*
                                                   DEANNA L. DURRETT

23