# United States Court of Appeals
## For the First Circuit

No. 13-1490

SARAHJANE BLUM; RYAN SHAPIRO; LANA LEHR; LAUREN GAZZOLA;
IVER ROBERT JOHNSON, III,

Plaintiffs, Appellants,

v.

ERIC H. HOLDER, JR., Attorney General,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Lynch, Chief Judge,
Thompson and Kayatta, Circuit Judges.

Rachel Meeropol, with whom Alexis Agathocleous, Center for
Constitutional Rights, Alexander A. Reinert, David Milton, and
Howard Friedman were on brief, for appellants.
Matthew M. Collette, Attorney, Appellate Staff, Civil
Division, with whom Stuart F. Delery, Assistant Attorney General,
Carmen M. Ortiz, United States Attorney, and Michael Jay Singer,
Attorney, Appellate Staff, Civil Division, were on brief, for
appellee.
Odette J. Wilkens, Christine L. Mott, Chair, Committee on
Animal Law, Brian J. Kreiswirth, Chair, Committee on Civil Rights,
and Kevin L. Barron on brief for The Association of the Bar of the
City of New York, amicus curiae in support of appellants.
Matthew R. Segal, Sarah R. Wunsch, David J. Nathanson, and
Wood & Nathanson, LLP on brief for American Civil Liberties Union
of Massachusetts, American Civil Liberties Union, and National
Lawyers Guild, amici curiae in support of appellants.

---

March 7, 2014

---

    **LYNCH, <u>Chief Judge</u>**. Sarahjane Blum and four others are committed and experienced animal right activists. Although they have never been prosecuted or threatened with prosecution under the Animal Enterprise Terrorism Act ("AETA" or "Act"), 18 U.S.C. § 43, which criminalizes "force, violence, and threats involving animal enterprises," they sued to obtain declaratory and injunctive relief that the statute is unconstitutional under the First Amendment.

    The district court dismissed their complaint under Rule 12(b)(1), finding that these plaintiffs lacked standing because they have suffered no injury in fact as required by Article III. <u>Blum</u> v. <u>Holder</u>, 930 F. Supp. 2d 326, 337 (D. Mass. 2013). The court held that plaintiffs "failed to allege an objectively reasonable chill" on their First Amendment rights and, hence, "failed to establish an injury-in-fact." <u>Id.</u> at 335. We affirm.

I.

    In their complaint, plaintiffs allege three constitutional defects in AETA. First, plaintiffs allege that, both on their face and as-applied, subsections (a)(2)(A) and (d) of AETA are substantially overbroad in violation of the First Amendment. Plaintiffs maintain that subsection (a)(2)(A) must be read to prohibit all speech activity with the purpose and effect of causing an animal enterprise to lose profits and that subsection

-3-

(d)(3) must be read to impose higher penalties on the basis of such loss.[1]

Second, plaintiffs allege that, both on its face and as-applied, AETA discriminates on the basis of content and viewpoint, again in violation of the First Amendment. Plaintiffs argue that the Act, which conditions liability on acting with "the purpose of damaging or interfering with the operations of an animal enterprise,"[2] 18 U.S.C. § 43(a), discriminates on the basis of content by targeting core political speech that impacts the operation of animal enterprises and on the basis of viewpoint by privileging speech that is supportive of animal enterprises and criminalizing certain speech that is opposed to such enterprises.

---

[1] In their complaint, plaintiffs allege also that AETA subsection (a)(2)(C) is overbroad. On appeal, plaintiffs claim only that subsection (a)(2)(C) is void for vagueness.

[2] AETA defines "animal enterprise" as follows:

(1) the term "animal enterprise" means--

    (A) a commercial or academic enterprise that uses or sells animals or animal products for profit, food or fiber production, agriculture, education, research, or testing;

    (B) a zoo, aquarium, animal shelter, pet store, breeder, furrier, circus, or rodeo, or other lawful competitive animal event; or

    (C) any fair or similar event intended to advance agricultural arts and sciences[.]

18 U.S.C. § 43(d)(1).

-4-

Third, plaintiffs allege that, both on its face and as-applied, AETA is void for vagueness. Plaintiffs complain that various of the Act's key terms are so imprecise as to prevent a reasonable person from understanding what the statute prohibits, encouraging arbitrary or discriminatory enforcement.

None of the plaintiffs express any desire or intent to damage or cause loss of tangible property or harm to persons. Plaintiffs do allege both that they have an objectively reasonable fear of future prosecution and that they have presently refrained from engaging in certain activities protected by the First Amendment for fear AETA may be read to cover their activities and so subject them to future prosecution. Both that fear of future harm and that present self-restraint, they say, have already caused them to suffer injury in fact. They do not plead that they have received any information that law enforcement officials have any intention of prosecuting them under AETA. Indeed, the Government has disavowed, before both this court and the district court,[3] any intention to prosecute plaintiffs for what they say they wish to do, characterizing plaintiffs' various AETA interpretations as

---

[3] In the memorandum in support of its motion to dismiss before the district court, the Government stated flatly, "Plaintiffs have no concrete, actual intent to engage in specific activity at a specific time in the near future that will possibly subject them to the AETA." At oral argument before this court, the Government insisted "there is no intent to prosecute" plaintiffs for their stated intended conduct, which the Government characterized as "essentially peaceful protest."

unreasonable. Plaintiffs do not claim they have engaged in or wish to engage in activities plainly falling within the core of the statute, which is concerned with intentional destruction of property and making true threats of death or serious bodily injury. We describe what they do claim.

Plaintiff Sarahjane Blum alleges that she would like to, but has been deterred from acting to, lawfully investigate conditions at the Au Bon Canard foie gras farm in Minnesota, to create a documentary film, and to publicize the results of her investigation. She would also like to organize letter-writing and protest campaigns to raise public awareness and pressure local restaurants to stop serving foie gras.

Plaintiff Ryan Shapiro alleges that he would like to lawfully document and film animal rights abuses but is deterred from doing so. Shapiro continues to engage in leafleting, public speaking, and campaign work, but fears that these methods of advocacy are less effective than investigating underlying industry conduct.

Plaintiff Lana Lehr alleges that, but for AETA, she would attend lawful, peaceful anti-fur protests, bring rabbits with her to restaurants that serve rabbit meat, and distribute literature at events attended by rabbit breeders. Lehr alleges that, at present, she limits her animal rights advocacy to letter-writing campaigns, petitions, and conferences.

Plaintiff Iver Robert Johnson, III, alleges that he has been unable to engage in effective animal rights advocacy because <u>others</u> are chilled from engaging in protests out of fear of prosecution under AETA. Johnson does not allege that <u>he</u> has refrained from lawful speech activity on the basis of such fear.

Finally, plaintiff Lauren Gazzola alleges that she is chilled from making statements short of incitement in support of illegal conduct. Gazzola was convicted in 2004 under AETA's predecessor statute, the Animal Enterprise Protection Act ("AEPA"), for making true threats against individuals and for planning and executing illegal activities as a member of the United States branch of Stop Huntingdon Animal Cruelty. Her convictions were upheld on appeal. <u>See</u> <u>United States</u> v. <u>Fullmer</u>, 584 F.3d 132, 157 (3d Cir. 2009).

II.

A.     <u>Statutory Framework</u>

In 1992, Congress enacted AEPA, which criminalized the use of interstate or foreign commerce for intentional physical disruption of the operations of an animal enterprise. In 2002, Congress amended AEPA, increasing the available penalties. In 2006, in response to "an increase in the number and the severity of criminal acts and intimidation against those engaged in animal enterprises," 152 Cong. Rec. H8590-01 (daily ed. Nov. 13, 2006)

(statement of Rep. Sensenbrenner), Congress amended AEPA again, renaming it AETA.

In contrast to AEPA, AETA does not specifically limit its scope to <u>physical</u> disruption.  AETA also criminalizes placing a person in fear of injury or death regardless of economic damage.[4] 18 U.S.C. § 43(a)(2)(B).  AETA makes clear that threats of vandalism, harassment, and intimidation against third parties that are related to or associated with animal enterprises are themselves substantive violations of the Act.  Id.  Finally, AETA makes available increased penalties.  Id. § 43(b).

AETA is codified under the title "Force, violence, and threats involving animal enterprises." Id. § 43.  The Act consists of five subsections, four of which are relevant here.  Subsection (a) of the Act defines "Offense":

> (a) Offense. -- Whoever travels in interstate or foreign commerce, or uses or causes to be used the mail or any facility of interstate or foreign commerce --
>
>> (1) for the purpose of damaging or interfering with the operations of an animal enterprise; and
>>
>> (2) in connection with such purpose --
>>
>>> (A) intentionally damages or causes the loss of any real or personal property (including animals or records) used by an

---

[4] Before enactment of AETA, federal officials utilized, inter alia, the interstate stalking statute, 18 U.S.C. § 2261A, to police such conduct.  See Fullmer, 584 F.3d at 138.

-8-

> animal enterprise, or any real or
> personal property of a person or
> entity having a connection to,
> relationship with, or transactions
> with an animal enterprise;
>
> (B) intentionally places a person
> in reasonable fear of the death
> of, or serious bodily injury to
> that person, a member of the
> immediate family (as defined in
> section 115) of that person, or a
> spouse or intimate partner of that
> person by a course of conduct
> involving threats, acts of
> vandalism, property damage,
> criminal trespass, harassment, or
> intimidation; or
>
> (C) conspires or attempts to do
> so; shall be punished as provided
> for in subsection (b).

Id. § 43(a).

Subsection (b) sets out the penalties. Of significance here, AETA indexes available penalties to whether and in some instances to what extent the offending conduct results in "economic damage," "bodily injury," "death," or a "reasonable fear of serious bodily injury or death." Id. § 43(b).

Subsection (d) in turn defines various key terms.[5] Most important here, subsection (d) defines "economic damage" as used in the penalties subsection as follows:

> (3) the term "economic damage" --

---

[5] Subsection (c) of the Act establishes a scheme for restitution. 18 U.S.C. § 43(c).

(A) means the replacement costs of lost or damaged property or records, the costs of repeating an interrupted or invalidated experiment, the loss of profits, or increased costs, including losses and increased costs resulting from threats, acts or vandalism, property damage, trespass, harassment, or intimidation taken against a person or entity on account of that person's or entity's connection to, relationship with, or transactions with the animal enterprise; but

(B) does not include any lawful economic disruption (including a lawful boycott) that results from lawful public, governmental, or business reaction to the disclosure of information about an animal enterprise[.]

Id. § 43(d)(3).

Last, subsection (e) of the Act articulates two relevant rules of construction:

(e) Rules of construction. -- Nothing in this section shall be construed --

(1) to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution; [or]

(2) to create new remedies for interference with activities protected by the free speech or free exercise clauses of the First Amendment to the Constitution, regardless of the point of view expressed, or to limit any existing legal remedies for such interference[.]

-10-

Id. § 43(e).[6]

B.      Procedural History

        Plaintiffs filed this action in the Massachusetts
District Court on December 15, 2011.  On March 9, 2012, the
Government filed a motion to dismiss under Rule 12(b)(1) for lack
of subject matter jurisdiction, arguing lack of standing, and under
Rule 12(b)(6) for failure to state a claim.  The district court on
March 18, 2013 granted the Government's motion under Rule 12(b)(1).
Blum, 930 F. Supp. 2d at 335.  The court held that plaintiffs
"failed to allege an objectively reasonable chill" on their First
Amendment rights and, hence, "failed to establish an injury-in-
fact" as required by Article III.  Id.

                              III.

        This court reviews de novo a district court's grant of a
motion to dismiss for lack of standing.  McInnis-Misenor v. Me.
Med. Ctr., 319 F.3d 63, 67 (1st Cir. 2003).  For purposes of
review, we accept as true all material allegations in the complaint
and construe them in plaintiffs' favor.  Manqual v. Rotger-Sabat,
317 F.3d 45, 56 (1st Cir. 2003).  However, "this tenet does not
apply to 'statements in the complaint that merely offer legal

---

        [6]      Subsection (3) also articulates a third rule of
construction according to which AETA shall not be construed "to
provide exclusive criminal penalties or civil remedies with respect
to the conduct prohibited by this action, or to preempt State or
local laws that may provide such penalties or remedies."  18 U.S.C.
§ 43(e)(3).

conclusions couched as facts or are threadbare or conclusory,'" <u>Air Sunshine, Inc.</u> v. <u>Carl</u>, 663 F.3d 27, 33 (1st Cir. 2011) (quoting <u>Soto-Torres</u> v. <u>Fraticelli</u>, 654 F.3d 153, 158 (1st Cir. 2011)), or to allegations so "speculative that they fail to cross 'the line between the conclusory and the factual,'" <u>id.</u> (quoting <u>Peñalbert-Rosa</u> v. <u>Fortuño-Burset</u>, 631 F.3d 592, 595 (1st Cir. 2011)).

A.      <u>The Law of Standing for First Amendment Pre-Enforcement Suits</u>

"'The party invoking federal jurisdiction bears the burden of establishing' standing." <u>Clapper</u> v. <u>Amnesty Int'l USA</u>, 133 S. Ct. 1138, 1148 (2013) (quoting <u>Lujan</u> v. <u>Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

Article III restricts a federal court's jurisdiction to certain "Cases" and "Controversies." U.S. Const. art. III. "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" <u>Clapper</u>, 133 S. Ct. at 1146 (quoting <u>Raines</u> v. <u>Byrd</u>, 521 U.S. 811, 818 (1997)). This requirement "is founded in concern about the proper -- and properly limited -- role of the courts in a democratic society." <u>Summers</u> v. <u>Earth Island Inst.</u>, 555 U.S. 488, 492-93 (2009) (quoting <u>Warth</u> v. <u>Seldin</u>, 422 U.S. 490, 498 (1975)).

To show standing, plaintiffs must "'allege[] such a personal stake in the outcome of the controversy' as to warrant [their] invocation of federal-court jurisdiction and to justify

-12-

exercise of the court's remedial powers on [their] behalf." <u>Warth</u>, 422 U.S. at 498-99 (quoting <u>Baker</u> v. <u>Carr</u>, 369 U.S. 186, 204 (1962)). As <u>Clapper</u> v. <u>Amnesty Int'l USA</u>, 133 S. Ct. at 1147, notes, in all cases, to establish Article III standing:

> [Plaintiffs must show] an injury [that is] "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." <u>Monsanto Co.</u> v. <u>Geertson Seed Farms</u>, []130 S. Ct. 2743, 2752[] (2010). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes -- that the injury is <u>certainly</u> impending." [<u>Lujan</u>, 504 U.S. at] 565 n.2 (internal quotation marks omitted). Thus, we have repeatedly reiterated that "threatened injury must be <u>certainly impending</u> to constitute injury in fact," and that "[a]llegations of <u>possible</u> future injury" are not sufficient. <u>Whitmore</u> [v. <u>Arkansas</u>], 595 U.S. [149,] 158 [(1990)] (emphasis added; internal quotation marks omitted)[.]

<u>Id.</u> (sixth alteration in original) (citation omitted).[7]

This court has said that, in challenges to a state statute under the First Amendment:

> [T]wo types of injuries may confer Article III standing without necessitating that the challenger actually undergo a criminal prosecution. The first is when "the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a

---

[7] To be clear, before <u>Clapper</u>, the Supreme Court had imposed a "certainly impending" standard in the context of a First Amendment pre-enforcement challenge to a criminal statute. <u>See</u> <u>Babbitt</u> v. <u>United Farm Workers Nat'l Union</u>, 442 U.S. 289, 298 (1979).

constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution." [Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)]. . . . The second type of injury is when a plaintiff "is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." N.H. Right to Life [Political Action Comm. v. Gardner], 99 F.3d [8,] 13 [(1st Cir. 1996)][.]

Manqual, 317 F.3d at 56-57 (second alteration in original).

The Supreme Court has long held that as to both sorts of claims of harm, "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Babbitt, 442 U.S. at 298. "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 13-14 (1972).

Most recently, Clapper emphasized that "[o]ur standing inquiry has been especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." 133 S. Ct. at 1147 (alteration in original) (quoting Raines, 521 U.S. at 819-20). We apply that standard here.

In Clapper, the Supreme Court addressed the Article III standing requirement for First Amendment and Fourth Amendment challenges to a federal statute. There, the Court addressed a pre-

-14-

enforcement challenge under the First Amendment by journalists, attorneys, and others to the new Foreign Intelligence Surveillance Act.[8] Id. at 1146. That Act authorized the Government to seek permission from the Foreign Intelligence Surveillance Court to electronically survey the communications of non-U.S. persons located abroad, without demonstrating probable cause that the target of the surveillance is a foreign power or agent thereof and without specifying the nature and location of each of the facilities or places at which the surveillance will take place. See id. at 1156. The plaintiffs' complaint was not of a threat of enforcement of a criminal statute against them which would lead to a chilling of First Amendment activity, but rather of a more direct chilling of speech and invasion of their First Amendment rights when the Government exercised this new authority. Unlike this case, Clapper also raised threats to the plaintiffs' personal privacy interests.

The Clapper trial court had held the plaintiffs lacked standing; the Second Circuit disagreed; and the Supreme Court reversed. Id. at 1146. The Supreme Court first held that the Second Circuit had erred as a matter of law in holding that the

---

[8] "Pre-enforcement" is a term used in at least two contexts. In one, as in Clapper, the suit is brought immediately upon enactment of the statute, before there has been an opportunity to enforce. In the other, as here, the law has been on the books for some years, and there have been charges brought under it in other cases, but the plaintiffs have not been prosecuted under it and say they fear prosecution.

-15-

plaintiffs could establish the needed injury for standing merely by showing an "objectively reasonable likelihood that the plaintiffs' communications are being or will be monitored under the [Act]." Amnesty Int'l USA v. Clapper, 638 F.3d 118, 134 (2d Cir. 2011). The Court held that the Second Circuit's "objectively reasonable likelihood" standard was inconsistent with "the well-established requirement that threatened injury must be 'certainly impending.'" Clapper, 133 S. Ct. at 1147 (quoting Whitmore, 495 U.S. at 158). It is not enough, the Court held, to allege a subjective fear of injurious government action, even if that subjective fear is "not fanciful, irrational, or clearly unreasonable."[9] Id. at 1151 (quoting Amnesty Int'l USA v. Clapper, 667 F.3d 163, 180 (2d Cir. 2011) (Raggi, J., dissenting from denial of rehearing en banc)).

Clapper also rejected plaintiffs' contention that "present costs and burdens that are based on a fear of surveillance" amounted to a cognizable injury. Id. It reasoned that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." Id.

---

[9] As one treatise has noted, Clapper "signaled a renewed caution about finding injury in fact based on probabilistic injury and the reasonable concerns that flow from it." Richard H. Fallon, Jr., John F. Manning, Daniel J. Meltzer, & David L. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 9 (6th ed. Supp. 2013). The treatise did not suggest the Clapper injury standard was inapplicable to challenges to criminal statutes.

-16-

In rejecting the Second Circuit's "objectively reasonable likelihood" standard, the Supreme Court may have adopted a more stringent injury standard for standing than this court has previously employed in pre-enforcement challenges on First Amendment grounds to state statutes.

Before the decision in <u>Clapper</u>, this circuit applied an "objectively reasonable" fear of prosecution injury standard in First Amendment pre-enforcement actions, at least as to state statutes.[10] <u>See</u> <u>Nat'l Org. for Marriage</u> v. <u>McKee</u>, 649 F.3d 34, 48 (1st Cir. 2011); <u>Ramírez</u> v. <u>Sánchez Ramos</u>, 438 F.3d 92, 99 (1st Cir. 2006); <u>Manqual</u>, 317 F.3d at 57; <u>R.I. Ass'n of Realtors, Inc.</u> v. <u>Whitehouse</u>, 199 F.3d 26, 31 (1st Cir. 1999); <u>N.H. Right to Life</u>, 99 F.3d at 14.

In assessing the risk of prosecution as to particular facts, weight must be given to the lack of a history of enforcement of the challenged statute to like facts, that no enforcement has been threatened as to plaintiffs' proposed activities. Particular weight must be given to the Government disavowal of any intention to prosecute on the basis of the Government's own interpretation of the statute and its rejection of plaintiffs' interpretation as

---

[10]   In <u>Ramírez</u> v. <u>Sánchez Ramos</u>, 438 F.3d 92, 98 (1st Cir. 2006), we said that to constitute a cognizable injury, both fear of prosecution and chilling "require[] a credible threat -- as opposed to a hypothetical possibility -- that the challenged statute will be enforced to the plaintiff's detriment if she exercises her First Amendment rights."

unreasonable. The Government has affirmatively represented that it does not intend to prosecute such conduct because it does not think it is prohibited by the statute.[11]  See Holder v. Humanitarian Law Project ("HLP"), 130 S. Ct. 2705, 2717 (2010) (holding that plaintiffs face a credible threat of prosecution where there is a history of prosecution under the challenged law and "[t]he Government has not argued . . . that plaintiffs will not be prosecuted if they do what they say they wish to do" (emphasis added)); Babbitt, 442 U.S. at 302 ("Moreover, the State has not disavowed any intention of invoking the criminal penalty provision against [entities] that [violate the statute]." (emphasis added)); N.H. Right to Life, 99 F.3d at 17 ("Indeed, the defendants have not only refused to disavow [the statute] but their defense of it indicates that they will some day enforce it."); see also Manqual, 317 F.3d at 58 (actual threat of prosecution).

This Government disavowal is even more potent when the challenged statute contains, as here, explicit rules of construction protecting First Amendment rights, which in themselves would inhibit prosecution of First Amendment activities.  In Clapper, the Court credited the specific rules of construction contained in the statute meant to protect Fourth Amendment rights

---

[11]  We think that Clapper does not call into question the assumption that the state will enforce its own non-moribund criminal laws, absent evidence to the contrary.  See N.H. Right to Life, 99 F.3d at 15.  That is not the issue here, where the Government itself says the statute does not apply.

in assessing the lack of an impending injury.    133 S. Ct. at
1145 n.3.

    In <u>Clapper</u>'s analysis of injury, it considered that the
fear of monitoring of communication rested on what the Court called
a highly speculative set of assumptions.    This included an
assumption that the Government would use the new surveillance
statute rather than other available means to achieve the same
ends.[12]    <u>Id.</u>   Here, as well, plaintiffs' fear of prosecution and
purported corresponding reluctance to engage in expressive activity
rest on speculation.    In fact, prosecution under AETA has been rare
and has addressed actions taken that are different from those
plaintiffs propose to undertake.[13]   For its part, the Government has
disavowed any intention to prosecute plaintiffs for their stated
intended conduct because, in its view, that conduct is not covered
by AETA.

    Plaintiffs argue that <u>Clapper</u> has no bearing on injury
and standing with respect to this First Amendment pre-enforcement
challenge because this challenge is to a <u>criminal</u> statute, and

_____

    [12]   For this reason, the Supreme Court held that, in addition
to being "too speculative," <u>Clapper</u>, 133 S. Ct. at 1143,
plaintiffs' alleged injury was not "fairly traceable" to the
challenged law, <u>id.</u> at 1149.  We do not reach the fairly traceable
ground.

    [13]   In addition to <u>United States</u> v. <u>Buddenberg</u> ("<u>Buddenberg
II</u>"), No. CR-09-00263 RMW, 2010 WL 2735547 (N.D. Cal. July 12,
2010), discussed later, plaintiffs cite in their complaint two AETA
prosecutions, both for the unlawful release of farm animals and
related vandalism.

Clapper did not involve a criminal statute. Clapper, however, draws no such distinction and is expressly concerned with Article III injury requirements. Plaintiffs' position is inconsistent with footnote 5 of Clapper, in which the Supreme Court held that plaintiffs' claimed injury was too speculative even under the potentially more lenient "substantial risk" of harm standard the Court has applied in some cases. Id. at 1150 n.5 (quoting Monsanto Co., 130 S. Ct. at 2754-55).

Clapper acknowledged that the Court's "cases do not uniformly require plaintiffs to demonstrate that it is literally certain that the harms they identify will come about." 133 S. Ct. at 1150 n.5. Involving a challenge to a decision of "the political branches in the fields of intelligence gathering and foreign affairs," id. at 1147, Clapper left open the question whether the previously-applied "substantial risk" standard is materially different from the "clearing impending" requirement. Id. As one example, the Court cited Babbitt, which involved a First Amendment, pre-enforcement challenge to a criminal statute. Id. Babbitt, unlike this case, involved a realistic threat of enforcement where the state had not disavowed any intention to prosecute. 442 U.S. at 302; see also HLP, 130 S. Ct. at 2717; Virginia v. Am. Book Sellers Ass'n, Inc., 484 U.S. 383, 393 (1988).

We reject plaintiffs' arguments that <u>Clapper</u> has no application here.[14]  As <u>Clapper</u> helps make clear, plaintiffs' alleged injuries are "too speculative for Article III purposes" and no prosecution is even close to impending.  133 S. Ct. at 1147 (quoting <u>Lujan</u>, 504 U.S. at 565 n.2).

B.       <u>Plaintiffs' Proffered Statutory Interpretation Does Not Make Out the Needed Injury</u>

In addition, we find that plaintiffs have not established the needed degree of injury to establish standing based on their proffered interpretations of the provisions of the statute.  This is so even under the potentially more lenient "substantial risk" standard or even the "objectively reasonable" standard.  <u>See</u> <u>Ramírez</u>, 438 F.3d at 98-99 (holding that plaintiff's fear was not "objectively reasonable" when she "never stated an intention to engage in any activity that could reasonably be construed to fall within the confines of the [challenged law]").  The United States argues that "the statue simply does not prohibit the actions

---

[14]   To the extent plaintiffs may intend to engage in  clearly proscribed conduct, they lack standing to assert a vagueness claim. <u>See</u> <u>HLP</u>, 130 S. Ct. at 2718-19 ("We consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" (alteration in original) (quoting <u>Hoffman Estates</u> v. <u>Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 495 (1982))); <u>Whiting</u> v. <u>Town of Westerly</u>, 942 F.2d 18, 22 (1st Cir. 1991) (no standing where plaintiff's proposed conduct is clearly proscribed); <u>Eicher</u> v. <u>United States</u>, 774 F.2d 27, 29 (1st Cir. 1985) (same).

-21-

plaintiffs intend to take," so they can have no legitimate fear of prosecution.

Plaintiffs argue the district court erred 1) in holding that their expansive interpretation of subsection (a)(2)(A), the destruction of property subsection, was unreasonable and, hence, that their fear of prosecution under that subsection was unreasonable as well; 2) in failing to recognize plaintiff Lauren Gazzola's standing to challenge subsection (a)(2)(B) on the basis of her would-be intention to advocate but not incite illegal conduct; and 3) in failing to credit their claim that subsection (a)(2)(C), the conspiracy subsection, could reasonably be interpreted as criminalizing any attempt to interfere with the operations of an animal enterprise. We address each argument in turn.

### 1.    Subsection (a)(2)(A)

Plaintiffs argue that subsection (a)(2)(A) of the Act is substantially overbroad because it must be interpreted as criminalizing any _expressive_ activity that intentionally results in the loss of profits to an animal enterprise, even in the absence of damage to or loss of property used, and will be so prosecuted. The United States disavows that reading.

Subsection (a)(2)(A) prohibits the use of interstate or foreign commerce for the purpose of damaging or interfering with

the operations of an animal enterprise where, in connection with that purpose, one:

> [I]ntentionally damages or causes the loss of any real or personal property (including animals or records) used by an animal enterprise, or any real or personal property of a person or entity having a connection to, relationship with, or transactions with an animal enterprise.

18 U.S.C. § 43(a)(2)(A). Plaintiffs argue that a) "personal property" includes lost profits, and therefore b) the Act makes unlawful all speech, including peaceful demonstrations, with the purpose and effect of causing an animal enterprise to lose profits.[15]

The United States replies, relying on the plain text, rules of construction, and legislative intent shown in legislative history, that because subsection (a)(2)(A) prohibits only intentional destruction of personal property "<u>used</u> by an animal enterprise," <u>id.</u> § 43(a)(2)(A) (emphasis added), the <u>use</u> of "personal property" cannot reasonably lead to prosecutions based merely on expressive activity causing lost profits.

The Government says Congress intended expressive conduct to be protected against prosecution by AETA's rules of construction. Further, if more is needed as to congressional

---

[15] The district court held that "personal property" as used in subsection (a)(2)(A) must be read to encompass only "[]tangible" things, reasoning that subsection (a)(2)(A) provides as illustrations of "personal property" two "[]tangible[s]," namely "animals" and "records." <u>Blum</u>, 930 F. Supp. 2d at 336–37.

-23-

intent, AETA's legislative history shows the Act was passed to combat "violent acts" such as "arson, pouring acid on cars, mailing razor blades, and defacing victims' homes." 152 Cong. Rec. H8590-01 (daily ed. Nov. 12, 2006) (statement of Rep. Sensenbrenner); see also id. (statement of Rep. Scott) ("While we must protect those engaged in animal enterprises, we must also protect the right of those engaged in [F]irst [A]mendment freedoms of expression regarding such enterprises. It goes without saying that first amendment freedoms of expression cannot be defeated by statute. However, to reassure anyone concerned with the intent of this legislation, we have added in the bill assurances that it is not intended as a restraint on freedoms of expression such as lawful boycotting, picketing or otherwise engaging in lawful advocacy for animals."); 152 Cong. Rec. S9254-01 (daily ed. Sept. 8, 2006) (statement of Sen. Feinstein) ("[T]his legislation confronts these terrorist threats in [a] manner that gives due protections under the First Amendment. I fully recognize that peaceful picketing and public demonstrations against animal testing should be recognized as part of our valuable and sacred right to free expression.").

This court need not decide in the abstract whether "personal property . . . used by an animal enterprise" could ever be reasonably interpreted to include intangibles such as profits.[16]

---

[16] We note that under Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), any fact that increases a maximum available criminal sentence must be found by a jury beyond a reasonable doubt.

-24-

We are satisfied that AETA includes safeguards in the form of its expression-protecting rules of construction, which preclude an interpretation according to which protected speech activity resulting in lost profits gives rise to liability under subsection (a)(2)(A).

Plaintiffs insist that AETA's rules of construction cannot save an otherwise unlawful statute and so are irrelevant. Our focus is on the congressional intent stated in the statute as to what conduct is covered. Congress has made it clear that prosecutions under the statute should not be brought against "any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution." 18 U.S.C. § 43(e)(1). We have no reason to think prosecutors will ignore these plain expressions of limiting intent.

### 2.    Subsection (a)(2)(B)

Plaintiffs argue next that plaintiff Lauren Gazzola has a reasonable fear of prosecution under AETA subsection (a)(2)(B), which prohibits "intentionally plac[ing] a person in reasonable fear of . . . death . . . or serious bodily injury . . . by a course of conduct involving threats, acts of vandalism, property damage, criminal trespass, harassment, or intimidation." Id. § 43(a)(2)(B). Gazzola alleges a desire to voice general support for illegal action by others and to participate in lawful protests.

-25-

Gazzola alleges further that she is chilled from engaging in such general advocacy for fear that it might fall under subsection (a)(2)(B).

Gazzola alleges no intention to engage in "vandalism, property damage, criminal trespass, harassment, or intimidation." Nor does she allege an intention to act in a way that would give rise to a "reasonable fear of . . . death . . . or serious bodily injury." Indeed, Gazzola specifically disavows any intention to engage in advocacy that rises to the level of incitement. See Ashcroft v. Free Speech Coal., 535 U.S. 234, 253 (2002) ("The government may suppress speech for advocating the use of force or a violation of law only if 'such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'" (quoting Brandenburg v. Ohio, 395 U.S. 444, 447 (1969) (per curiam))).[17]

Taking her disavowal in combination with AETA's specific exemption from liability of "any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment," 18 U.S.C. § 43(e)(1),

---

[17] Plaintiffs complain that, in the wake of Virginia v. Black, 538 U.S. 343 (2003), it is unclear whether "true threats" require subjective intent. See United States v. Clemens, 738 F.3d 1, 2-3 (1st Cir. 2013) (noting circuit split on issue, finding no reason to depart from this circuit's objective test). However, as this court has explained, "[i]t is rare that a jury would find that a reasonable speaker would have intended a threat under the particular facts of a case but that a competent defendant did not." Id. at 12. The argument does not advance Gazzola's cause.

Gazzola's fear of prosecution for the lawful activities she describes under subsection (a)(2)(B) is unreasonable.

That Gazzola previously engaged in and was convicted under AEPA for plainly illegal conduct does not help her claim that she would be prosecuted for legal expressive activities. Gazzola's previous actions went well beyond expressing general support for illegal action by others. The Third Circuit found that Gazzola and her co-defendants "coordinated and controlled SHAC's [illegal] activities," engaged in "[d]irect action" and "intimidation and harassment," and "participated in illegal protests, in addition to orchestrating the illegal acts of others." <u>Fullmer</u>, 584 F.3d at 155-56.

### 3. Facial Attack on Subsection (a)(2)(C)

Last, plaintiffs argue that the structure of the conspiracy subsection of the Act could reasonably be interpreted to criminalize any conspiracy (or attempt) to damage or interfere with the operations of an animal enterprise, even when there is no intent to or accomplishing of any damage or destruction of property or causing fear of serious bodily injury or death. Under AETA, liability exists where an individual uses interstate or foreign commerce "for the purpose of damaging or interfering with the operations of an animal enterprise," 18 U.S.C. § 43(a)(1), and, in connection with such purpose, intentionally damages or destroys property, <u>id.</u> § 43(a)(2)(A), intentionally places a person in fear

of serious bodily injury or death, id. § 43(a)(2)(B), or "conspires or attempts to do so," id. § 43(a)(2)(C).

The dispute here is to what "so" in subsection (a)(2)(C) refers. The Government maintains that the "so" can only be read to refer to the activities described in subsections (a)(2)(A)-(B), that is, intentionally harming property or placing a person in reasonable fear of serious bodily injury or death. See id. § 43(a)(2)(A) (conditioning liability on "intentionally damag[ing] or caus[ing] the loss of any real or personal property," etc.); id. § 43(a)(2)(B) (conditioning liability on "intentionally plac[ing] a person in reasonable fear of . . . death . . . or serious bodily injury," etc.).

Plaintiffs, by contrast, argue that "so" might refer to the activity described in subsection (a)(1), that is, using interstate or foreign commerce "for the purpose of damaging or interfering with the operations of an animal enterprise." Id. § 43(a)(1). Plaintiffs' interpretation depends on the somewhat awkward syntax of the provision. While Congress might have written more clearly, plaintiffs' reading is not what Congress intended. That interpretation cannot be squared with the clear expressions of legislative intent in both the plain text of the Act and the legislative history. Plaintiffs' interpretation is inconsistent with AETA's title as codified, "Force, violence, and threats involving animal enterprises." 18 U.S.C. § 43 (emphasis added);

-28-

see also Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554
U.S. 33, 47 (2008) (relying in part on subchapter's title to reject
respondent's interpretation of that subchapter). Plaintiffs'
interpretation would also render subsection (a)(2)(C) redundant
since every time subsection (a)(1) is satisfied so too would be the
"attempt" branch of subsection (a)(2)(C). Avoidance of redundancy
is a basic principle of statutory interpretation. O'Connell v.
Shalala, 79 F.3d 170, 179 (1st Cir. 1996).

Further, the rules of construction protecting expressive
activity would preclude plaintiffs' broad interpretation. In
addition, plaintiffs' interpretation contradicts the legislative
history, already recited, and which also shows that AETA targets
"heinous acts" such as "firebomb[ing]." 152 Cong. Rec. S9254-01
(daily ed. Sept. 8, 2006) (statement of Sen. Feinstein). One other
court as well has rejected this interpretation. See United States
v. Buddenberg ("Buddenberg I"), No. CR-09-00263 RMW, 2009 WL
3485937, at *12 (N.D. Cal. Oct. 28, 2009).[18]

IV.

In sum, "[plaintiffs] in the present case present no
concrete evidence to substantiate their fears, but instead rest on
mere conjecture about possible governmental actions." Clapper, 133
S. Ct. at 1154. In particular, plaintiffs' fear of prosecution

---

[18] Further, at oral argument, the Government insisted that "no
prosecutor is going to bring a case saying you've conspired to have
a purpose."

under AETA is based on speculation that the Government will enforce the Act pursuant to interpretations it has never adopted and now explicitly rejects.[19] Such unsubstantiated and speculative fear is not a basis for standing under Article III.[20]

If plaintiffs do choose to engage in conduct which causes them to be prosecuted under AETA, they are free to raise whatever defenses they have in that context.

We affirm the dismissal of this action for lack of standing. So ordered.

---

[19] The Association of the Bar of the City of New York, acting as amicus in support of plaintiffs, cites Buddenberg II as an example of unreasonable prosecution under AETA. In that case, the United States filed a criminal complaint under AETA and under 18 U.S.C. § 371 for conspiracy to violate AETA, alleging that defendants participated in a series of threatening demonstrations at the homes of a number of UC Berkeley and UC Santa Cruz biomedical researchers whose work involved the use of animals. Buddenberg II, 2010 WL 2735547, at *1. The district court dismissed the indictment without prejudice on the ground that the indictment failed to allege the facts of the crimes charged with sufficient specificity. Id. at *10. From the fact that an indictment lacked specificity, it does not follow that the interpretation of AETA underlying the indictment was as plaintiffs argue or that it was unreasonably expansive. The availability and use of a bill of particulars by defendants and the dismissal of the case further undercut any need to give pre-enforcement standing.

[20] Individual plaintiff Iver Robert Johnson, III, did not allege that he has even a "subjective 'chill,'" Laird, 408 U.S. at 13, and so he has failed to establish a cognizable injury. In addition, his claims fail to meet causation and redressability requirements. See Blum, 930 F. Supp. 2d at 337 n.91.